1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
11  ADONAI EL-SHADDAI, also known        Case No. CV 13-2327 RGK(JC)
    as James R. Wilkerson,
12                                       ORDER (1) DISMISSING
                    Plaintiff,           COMPLAINT WITH LEAVE TO
13                                       AMEND; AND (2) DENYING
             v.                          PENDING MOTIONS WITHOUT
14                                       PREJUDICE
    L.D. ZAMORA, et al.,
15                                       [DOCKET NOS. 30, 31, 33]
16                  Defendants.
17
18
19  I.     BACKGROUND AND SUMMARY
20         On April 1, 2013, Adonai El-Shaddai also known as James R. Wilkerson
21  ("plaintiff"), who is in custody and is proceeding without a lawyer (*i.e., "pro se"*),
22  filed an Application to Proceed In Forma Pauperis ("IFP Application") and lodged a
23  Civil Rights Complaint.[1]  On April 15, 2013, the Chief United States District Judge,
24  on the recommendation of a United States Magistrate Judge, denied the IFP
25  Application.  The United States Court of Appeals for the Ninth Circuit ("Ninth
26  _____
27         [1]The Complaint consists of a preprinted Civil Rights Complaint Form ("Comp. Form"), a
    14-page typewritten "Civil Rights Complaint" ("Comp. Memo"), and multiple exhibits ("Comp.
28  Ex.")

Circuit") reversed and remanded; the mandate issued on November 3, 2016. On January 12, 2017, plaintiff's IFP Application was granted in the District Court and the Complaint was formally filed. The matter was subsequently assigned to this Court.

The Complaint is not a model of clarity and appears to conflate multiple legal provisions, but, construed liberally, appears to arise under 42 U.S.C. § 1983 ("Section 1983"), the Americans with Disabilities Act, 42 U.S.C. section 12101, et seq. ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"), and state law, and to claim that the defendants – sixteen individuals connected with the California State Prison, Corcoran ("CSP-COR") and the California State Prison, Los Angeles County ("CSP-LAC"), all of whom are sued in their individual and official capacities[2] – were deliberately indifferent to plaintiff's serious medical disability in violation of the Eighth Amendment and deprived him of Equal Protection under the Fourteenth Amendment. (Comp. Memo at 1-2, 12). Plaintiff seeks declaratory, injunctive and monetary relief. (Comp. Form at 3-4D; Comp. Memo at 12-14).

As the Complaint is deficient in multiple respects, including those detailed below, it is dismissed with leave to amend.

Plaintiff's other pending motions – for order for service of process by U.S. Marshal, for costs, and for "review" – are denied without prejudice.

---

[2]The sixteen named defendants are: (1) L. D. Zamora, Chief, California Correctional Health Care Services ("CCHCS"); (2) Dr. Jeffery Wang, CSP-COR Chief Medical Executive; (3) Teresa Macias, CSP-COR Chief Executive Officer of Health Care; (4) Dr. Glenn Thiel, CSP-COR; (5) Dr. P. Pak, CSP-COR (apparently erroneously referred to as defendant "Kap" in the body of the Complaint Memo); (6) Dr. C. McCabe, CSP-COR; (7) Dr. Nguyen, CSP-COR; (8) Dr. Edgar Clark, Secretary, CSP-COR Pain Committee; (9) Dr. Ruff, CSP-COR; (10) Dr. Burr, CSP-COR; (11) Dr. A. Adams, CSP-LAC Chief Physician and Surgeon; (12) P. Shank, Chief Executive Officer, CSP-LAC Health Care; (13) Dr. C. Wu, CSP-LAC Physician and Surgeon; (14) Dr. P. Finander, CSP-LAC Chief Medical Executive; (15) Dr. J. Fitter, CSP-LAC; and (16) W. Olukamni, CSP-LAC Physician's Assistant. (Comp. Form at 3-4D; Comp. Memo at 1-4).

## II.    COMPLAINT

### A.    Facts

The Complaint alleges the following facts:

Plaintiff is a 56-year-old African Hebrew Israelite.  (Comp. Memo at 4, ¶ 19).  Due to his religious belief, he practices African Holistic Healing which includes the Holistic Rastafarian way of life.  (Comp. Memo at 4, ¶ 19).  He also suffers from chronic back pain and chronic arthritis.[3]  (Comp. Memo at 4, ¶ 20).

### 1.    Events Relating to Plaintiff's Confinement at CSP-COR

On April 18, 2011, plaintiff was seen by defendant [Pak] (apparently erroneously referenced as defendant "Kap") for treatment for his chronic lower back pain, his chronic arthritis, and to update his "medical chronic's."  (Comp. Memo at 4, ¶ 20).  Plaintiff explained to such defendant that he practices African Holistic Healing which includes the Holistic Rastafarian way of life, and requested that he be treated pursuant to the Compassionate Use Act of 1996 (Cal. Health & Safety Code § 11362.5) (*i.e.*, that he be given medical marijuana), with certain specified supplemental treatment.  (Comp. Memo at 4, ¶ 20).  Defendant [Pak] denied plaintiff's request, stating that the CCHCS did not provide the requested

---

[3] A December 2007 radiology report relating to his knees and lumbar spine ("December 2007 Knee/Spine Report") reflects spur formation in both of his knees and bilateral irregularity of the patellar articulating surfaces and degenerative changes throughout the lumbar spine with mild to moderate disc narrowing noted at L4-5.  (Comp. Memo at 6, ¶ 26; Comp. Ex. D).  An October 2008 MRI of plaintiff's lumbar spine ("2008 Spine MRI") reflects that plaintiff suffers from hypolordosis, degenerative disc disease, an extruded disc, and multiple disc protrusions.  (Comp. Memo at 5, ¶ 22; Comp Ex. D).  A September 2009 radiology report ("September 2009 Knee Report") reflects that an examination of plaintiff's right knee revealed severe degenerative changes in the patellofermoral joint space, sclerosis of the articular surface of the patella, and mild degenerative spurs medically and laterally about the knee joint.  (Comp. Ex. D).  A May 13, 2011 radiology report relating to an x-ray of his lumbar spine ("May 2011 Spine Report") indicates that plaintiff has a history of back pain with moderate degenerative disc disease and spondylosis.  (Comp. Memo at 6, ¶ 26; Comp. Ex. D).  A May 13, 2011 radiology report relating to an x-ray of plaintiff's left knee ("May 2011 Knee Report") indicates that plaintiff has left knee pain with mild osteoarthritis and mild patellar spur.  (Comp. Memo at 6, ¶ 26; Comp. Ex. D).

treatment. (Comp. Memo at 4, ¶ 20). Instead, defendant [Pak] prescribed acetaminophen for 10 days and submitted a CDC Form 7410, Comprehensive Accommodation Chrono for a permanent back brace, orthopedic shoes, bottom bunk, cotton bedding, no lifting and no pushing more than 15 pounds, no walking more than 15 minutes, and no work or education. (Comp. Memo at 4, ¶ 20).

On April 22, 2011, plaintiff submitted an emergency appeal requesting that he be treated as a "qualified patient" pursuant to California Health & Safety Code section 11362.5(b)(1)(A),[4] (*i.e.*, that he be afforded medical marijuana) with certain specified supplemental treatment, and that all of his medical chronos be updated. (Comp. Memo at 4, ¶ 21). Such appeal was supported by the 2008 MRI. (Comp. Memo at 5, ¶ 22).

On May 16, 2011, defendant Thiel denied his appeal and request for a permanent bottom bunk and back brace. (Comp. Memo at 4, ¶ 20; Comp. Memo at 5, ¶ 24). Plaintiff was dissatisfied with this response – which he attributed to defendants McCabe and Thiel – and sought a second level of administrative review, complaining that the denial of treatment for his chronic and substantial back pain violated the Eighth Amendment. (Comp. Memo at 5-6, ¶ 24). Defendants Thiel and Macias denied such second level appeal. (Comp. Memo at 6, ¶ 25). Dissatisfied, plaintiff pursued a third level appeal submitting additional

---

[4]California Health and Safety Code section 11362.5 – the Compassionate Use Act of 1996 – states the findings and declarations of the people of the State of California regarding the purposes of such Act and reflects that one such purpose is:

> To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.

Cal. Health & Safety § 11362.5(b)(1)(A).

4

medical records – at least the the December 2007 Knee/Spine Report and the May 2011 Spine and Knee Reports. (Comp. Memo at 6, ¶ 26; <u>see</u> <u>supra</u> note 3).[5]

On December 21, 2011, plaintiff filed an appeal relating to his efforts to obtain an identification card under state law to permit him to use marijuana for medical purposes in prison. (Comp. Memo at 7, ¶¶ 29-30) (citing Cal. Health § Safety Code §§ 11362.785(b)-(c)).[6]

On February 3, 2012, defendant McCabe denied plaintiff's request for written information and documentation necessary to apply for a medical marijuana identification card, indicating that the case had been presented to the Pain Committee which, on December 15, 2011, determined that there was no justification for medical marijuana treatment. (Comp. Memo at 7-8, ¶¶ 28, 29). The Pain Committee was chaired by defendants Clark, Ruff and Burr. The Pain Committee's decision was based on multiple falsehoods – that plaintiff did not know any of the exercises given to him by defendant Burr, that plaintiff was still doing "burbees" after defendant Burr asked him not to do them in October, that plaintiff was taking medication for depression, and that plaintiff had abused various drugs. (Comp. Memo at 8, ¶ 29).

On June 13, 2012, defendant Zamora denied plaintiff's third level appeal, finding no compelling evidence warranted intervention as plaintiff's medical

---

[5]Plaintiff later recites that he submitted additional medical records on an unspecified date to unspecified persons. (Comp. Memo at 7, ¶ 28).

[6]California Health & Safety Code sections 11362.785, as pertinent here, essentially provides that (1) nothing therein requires any accommodation of medicinal use of cannabis in penal institutions (Section 11362.785(a)); (2) notwithstanding the foregoing, a person shall not be prohibited or prevented from obtaining and submitting the written information and documentation necessary to apply for an identification card on the basis that he/she is confined in a penal institution (Section 11362.785(b)); and (3) nothing therein prohibits a penal institution from permitting a prisoner with an identification card to use cannabis for medicinal purposes under circumstances that will not endanger the health or safety of other prisoners or the security of the facility (Section 11362.785(c)).

condition had been evaluated by licensed clinical staff and plaintiff was receiving treatment deemed medically necessary. (Comp. Memo at 8, ¶ 29).

## 2. Events Relating to Confinement at CSP-LAC

Plaintiff was transferred to CSP-LAC on March 23, 2012. (Comp. Memo at 9, ¶ 32).

On April 2, 2012, Dr. J. Kim (not a defendant) saw plaintiff and denied plaintiff's request to renew a permanent chrono for ground floor cell/bottom bunk, back brace, knee brace, orthopedic shoes, cotton bedding, cane and mobility impaired vest. (Comp. Memo at 9, ¶ 32). On April 4, 2012, plaintiff filed an appeal. (Comp. Memo at 9, ¶ 33). On May 11, 2012, defendant Fitter interviewed plaintiff, observed plaintiff walk without pause, assistance, or assistive device from the housing unit across the yard to a reception clinic, and determined that plaintiff did not need the referenced permanent chrono renewed. (Comp. Memo at 9-10, ¶ 33). Defendants Fitter and Adams denied the first level review. (Comp. Memo at 10, ¶ 33). Defendants Finander and Zamora thereafter denied the second and third level reviews, respectively. (Comp. Memo at 10, ¶ 33).

On April 6, 2012, at approximately 8:00 a.m., plaintiff was rolling up his mattress and sitting up against the wall when he felt the discs in his lower back shifting, began to feel severe pain, and felt his lower back begin to swell until he could barely stand or walk. (Comp. Memo at 10, ¶ 32). Plaintiff told the porter who came to pick up his tray to signal "man down," and the porter activated his alarm. (Comp. Memo at 10, ¶ 34). Plaintiff was taken by ambulance to the Triage and Treatment area where he was seen by defendant Olukamni. (Comp. Memo at 10, ¶ 34). Defendant Olukamni entered the emergency area laughing and joking about performing a rectal exam and prepared to do so without questioning plaintiff regarding his medical condition. (Comp. Memo at 10, ¶ 34). Defendant Olukamni asked plaintiff to pull his pants down and lay down on the table. (Comp. Memo at 10, ¶ 34). When plaintiff inquired as to what that had to do with back pain,

6

defendant Olukamni responded that he had received a call indicating that plaintiff could not walk, and that he needed to see if plaintiff was paralyzed. (Comp. Memo at 10, ¶ 34). Plaintiff, who was then sitting in a wheelchair, explained that his severe pain was in the lower back and was the reason he could not walk. (Comp. Memo at 10, ¶ 34). Defendant Olukamni told plaintiff that if he was there for drugs, he had come to the wrong place, and that the only thing plaintiff was getting was a rectal exam. (Comp. Memo at 10-11, ¶ 34). Defendant Olukamni asked if plaintiff was refusing treatment, and plaintiff said "no." (Comp. Memo at 11, ¶ 34). Defendant Olukamni then gave plaintiff a rectal exam but performed no other exam and gave plaintiff no treatment. (Comp. Memo at 10, ¶ 34).

On April 11, 2012, plaintiff filed a staff complaint against defendant Olukamni based upon such defendant's denial of adequate medical treatment and what plaintiff viewed to be unprofessional and criminal conduct. (Comp. Memo at 10, ¶ 35). Such complaint was partially granted in that a confidential inquiry was conducted without details being shared. (Comp. Memo at 10, ¶ 35). Defendants Adams and Finander (who apparently reviewed such complaint), further stated that the standard of care when a patient complains of acute back pain with reported inability to walk is a rectal exam to rule out "caude equina syndrome." (Comp. Memo at 11, ¶ 35). Plaintiff alleges that defendant Olukamni could have checked the reflexes in his knees and ankles to determine whether or not he was suffering from "caude equina syndrome." (Comp. Memo at 11, ¶ 35). At the third level of review, defendant Zamora upheld the determination of defendants Adams and Finander. (Comp. Memo at 11, ¶ 35).

## B. Claims

Plaintiff asserts what he has framed as two "causes of action" which largely conflate multiple provisions of the law and appear to be alleged against all defendants.

///

7

The "First Cause of Action," construed liberally, appears to claim that defendants have denied him his federal constitutional right to equal protection of the law in relation to the Compassionate Use Act, the ADA, and the Rehabilitation Act. (Comp. Memo at 12, ¶ 36).

The "Second Cause of Action," construed liberally, appears to claim that defendants have violated the Eighth Amendment by acting with deliberate indifference to plaintiff's serious medical needs. (Comp. Memo at 12, ¶ 37).

## III.    PERTINENT LAW

### A.    The Screening Requirement

As plaintiff is a prisoner proceeding *in forma pauperis* on a complaint against a governmental defendant, the Court must screen the Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c).

When screening a complaint to determine whether it states any claim that is viable (*i.e.*, capable of succeeding), the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading

8

standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing id. at 555).

Thus, to survive screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014) (citations and quotation marks omitted). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted); see also Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule 8 pleading requirements) (emphasis added); Chappell v. Newbarth, 2009 WL 1211372, *3 (E.D. Cal. May 1, 2009) ("[A] complaint must put each defendant on notice of Plaintiff's claims against him or her, and their factual basis.") (citing Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004)). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

At this preliminary stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting id.), cert. denied, 135 S. Ct. 980 (2015). In addition, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and "need not [] accept as true allegations that contradict

9

matters properly subject to judicial notice or by exhibit," <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir.), <u>amended on denial of reh'g</u>, 275 F.3d 1187 (9th Cir. 2001) (citation omitted).

*Pro se* complaints are interpreted liberally to give plaintiffs "the benefit of any doubt." <u>Akhtar v. Mesa</u>, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). If a *pro se* complaint is dismissed because it does not state a claim, the court must freely grant "leave to amend" (that is, give the plaintiff a chance to file a new, corrected complaint) if it is "at all possible" that the plaintiff could fix the identified pleading errors by alleging different or new facts. <u>Cafasso v. General Dynamics C4 Systems, Inc.</u>, 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted).

**B.      Section 1983**

To state a claim under Section 1983, a plaintiff must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. 42 U.S.C. § 1983; <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (citations omitted); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is no vicarious liability in Section 1983 lawsuits. <u>Iqbal</u>, 556 U.S. at 676 (citing, *inter alia*, <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 691 (1978)). Hence, a government official – whether subordinate or supervisor – may be held liable under Section 1983 only when his or her own actions have caused a constitutional deprivation. <u>OSU Student Alliance v. Ray</u>, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing id.), <u>cert. denied</u>, 134 S. Ct. 70 (2013). Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).

///

An individual "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks omitted).

Similarly, a government official may be held individually liable under Section 1983 for acts taken in a supervisory capacity, but only when the supervisor's own misconduct caused an alleged constitutional deprivation. See Iqbal, 556 U.S. at 676, 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); OSU Student Alliance, 699 F.3d at 1069 (supervisor liable under Section 1983 only if "he . . . engaged in culpable action or inaction himself") (citing id. at 676). A supervisor may "cause" a constitutional deprivation for purposes of Section 1983 liability, if he or she (1) personally participated in or directed a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct. See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), cert. denied, 132 S. Ct. 2101 (2012).

### C.    Eighth Amendment

Prison officials violate the Eighth Amendment when they respond with deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103-05 (1976) (citations and footnotes omitted).

An inmate's medical need is sufficiently "serious" if, objectively, the failure to treat it "will result in significant injury or the unnecessary and wanton infliction of pain." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (citations and internal quotation marks omitted), cert. denied, 135 S. Ct. 946 (2015).

11

Such medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. . . ." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991) (citations omitted), overruled on other grounds by WMX Technologies, Inc., v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official acts with deliberate indifference when the official is subjectively aware of, but *purposefully* ignores or fails to respond to an "excessive risk to inmate health" (*i.e.*, a serious medical need). Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (citations omitted). A defendant's alleged indifference must be "substantial." Estelle, 429 U.S. at 105-06; Lemire v. California Department of Corrections and Rehabilitation, 726 F.3d 1062, 1081-82 (9th Cir. 2013) (citations omitted). A prison doctor's mistake, negligence, or malpractice does not establish deliberate indifference to serious medical needs. Estelle, 429 U.S. at 105-06. "Even gross negligence is insufficient . . . ." Lemire, 726 F.3d at 1082 (citation omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Colwell, 763 F.3d at 1066 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)) (quotation marks omitted).

A prisoner need not prove that he or she was completely denied medical care. Lopez, 203 F.3d at 1132. Rather, deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05 (footnotes omitted). Mere disagreement with a defendant's professional judgment concerning what medical care is most appropriate under the circumstances, however, is insufficient to show deliberate indifference. Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted). Hence, the medical care a defendant

provided to an inmate amounts to deliberate indifference only if the doctor chose a course of treatment that "was medically unacceptable under the circumstances" and did so "in conscious disregard of an excessive risk to plaintiff's health." Colwell, 763 F.3d at 1068 (citations and internal quotation marks omitted).

Where a plaintiff seeks to hold a prison official personally liable for damages, the plaintiff must establish a causal link between the particular defendant's deliberate indifference and the constitutional deprivation alleged. Leer, 844 F.2d at 633-34. Proper evaluation of causation involves "a very individualized approach which accounts for the duties, discretion, and means of each defendant." Id.

## D. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985), abrogated on other grounds as explained in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002). A Section 1983 claim predicated on an equal protection violation may be alleged, in pertinent part, under two theories. First, a plaintiff may state an equal protection claim by alleging that he was intentionally discriminated against based upon his membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), implicitly abrogated in part on other grounds as explained in Galbraith, 307 F.3d at 1125-26; see also Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005). Alternatively, if the challenged action did not involve a suspect classification, a plaintiff may still state an equal protection claim essentially by alleging that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1972); SeaRiver Maritime Financial Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002).

### E. ADA and Rehabilitation Act

To state a claim for violation of Title II of the ADA or Section 504 of the Rehabilitation Act,[7] a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; (3) such exclusion or discrimination was by reason of his disability; and (4) (for the Rehabilitation Act claim) the public entity receives federal financial assistance. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003). The treatment or lack of medical treatment for plaintiff's condition does not provide a basis upon which to impose liability. Burger v. Bloomberg, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions not basis for ADA claims); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.").

## IV. DISCUSSION

Here, the Complaint is deficient in numerous respects, including – but not limited to – the following:

First, to the extent plaintiff sues defendants in their official capacities for damages, the Complaint fails to state a claim for relief. A suit against a public employee in his or her official capacity is equivalent to a claim against the defendant's employer, Kentucky v. Graham, 473 U.S. 159, 166 (1985); Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Department, 533 F.3d 780, 799 (9th Cir. 2008), cert. denied, 555 U.S. 1098 (2009), which here is the State of California. Brown v. California Department of Corrections, 554 F.3d 747, 752 (9th Cir. 2009); Lucas v. Department of Corrections, 66 F.3d 245, 248 (9th Cir. 1995)

---

[7]See Zukle v. Regents of University of California, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ([Since] "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act [citations] . . . courts have applied the same analysis to claims brought under both statutes. . . .") (citations and internal citations omitted).

(per curiam).  Nonetheless, the Eleventh Amendment bars damages claims in federal court against a state official in his or her official capacity where, like here, the state has not waived, and Congress has not overridden the state's immunity.  See Will v. Michigan Department of State Police, 491 U.S. 58, 66-71 (1989) (citations omitted); Papasan v. Allain, 478 U.S. 265, 276-77 (1986) (citations omitted); Dittman v. State of California, 191 F.3d 1020, 1025-26 (9th Cir. 1999) (citations omitted), cert. denied, 530 U.S. 1261 (2000).

Second, plaintiff appears to have sued multiple defendants merely because they have some overarching and general responsibility for inmate health care irrespective of whether they personally had any interaction with defendant or played any role in the allegedly actionable events upon which his claims are predicated. For example, Jeffery Wang is named as a defendant assertedly because he is "legally responsible for the overall operation of the Health Care Service of each institution under its jurisdiction, including CSP-COR and CSP-LAC" (Comp. Memo at 2, ¶ 4), but he is not even mentioned in the Complaint Facts (Comp. Memo at 4-10).  Similarly, defendants Nguyen, Shank and Wu are generally alleged to be legally responsible for health care treatment of inmates (Comp. Memo at 3, ¶¶ 9, 14, 15), but are nowhere mentioned in the Complaint Facts (Comp. Memo at 4-10).  Plaintiff falls well short of plausibly alleging that at least such defendants caused any constitutional violation and accordingly, fails to state any claim against them.

Third and similarly, to the extent the Complaint generally and conclusorily alleges that defendants acted collectively to injure plaintiff, plaintiff fails to state a viable Section 1983 claim.  Such allegations against an indistinguishable group of defendants do not demonstrate a causal link between any *individual* defendant's conduct and an alleged constitutional violation, and therefore are insufficient to state a viable Section 1983 claim against any specific defendant.  See Baker v. McCollan, 443 U.S. 137, 142 (1979) ("[A] public official is liable under [Section]

1983 only 'if he *causes* the plaintiff to be subjected to a deprivation of his

constitutional rights.'") (citation omitted; emphasis in original); <u>Jones v. Williams</u>,

297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state

law to be liable under section 1983 there must be a showing of personal

participation in the alleged rights deprivation[.]"); <u>Taylor</u>, 880 F.2d at 1045

("Liability under section 1983 arises only upon a showing of personal participation

by the defendant."); <u>see also</u> <u>Pena v. Gardner</u>, 976 F.2d 469, 471 (9th Cir. 1992)

(Vague and conclusory allegations of official participation in civil rights violations

are not sufficient to state a claim under Section 1983) (citing <u>Ivey v. Board of</u>

<u>Regents of University of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982)); <u>Iqbal</u>, 556

U.S. at 680-84 (conclusory allegations in complaint which amount to nothing more

than a "formulaic recitation of the elements" are insufficient under pleading

standard in Fed. R. Civ. P. 8) (citations omitted).  To state a viable Section 1983

individual capacity claim plaintiff must, at a minimum, allege facts which

demonstrate the <u>specific</u> acts each <u>individual</u> defendant did and how that

individual's alleged misconduct <u>specifically</u> violated plaintiff's constitutional

rights.

Fourth, to the extent plaintiff claims that one or more defendants violated the

Compassionate Use Act of 1996 or other state law, the Complaint fails to state a

viable Section 1983 claim.  <u>See</u> <u>Crowley v. Nevada Secretary of State</u>, 678 F.3d

730, 736 (9th Cir. 2012) (pure violations of state law not cognizable under Section

1983) (citations omitted).

Fifth, much of the Complaint appears to assert that one or more defendants

acted negligently when providing medical care to plaintiff and/or prescribed a

course of treatment with which plaintiff disagreed (*e.g.*, refused to provide him with

medical marijuana and other supplemental treatment) – allegations which are

insufficient to state a viable Eighth Amendment claim.  <u>See, e.g.</u>, <u>Farmer</u>, 511 U.S.

at 835 ("deliberate indifference entails something more than mere negligence")

16

(citation omitted); <u>Estelle</u>, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); <u>Smith v. Suiter</u>, 579 Fed. Appx. 608, 608 (9th Cir. 2014) ("mistakes, negligence, or malpractice by medical professionals are not sufficient to constitute deliberate indifference. . .") (citation omitted); <u>Lemire</u>, 726 F.3d at 1082 ("Even gross negligence is insufficient to establish deliberate indifference [under the Eighth Amendment].") (citation omitted); <u>see also</u> <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."); <u>Harris v. Lake County Jail</u>, 2012 WL 1355732, *4-5* (N.D. Cal. Apr. 18, 2012) (plaintiff failed to state a deliberate indifference claim based on the denial of medical marijuana because there is no constitutional right to demand jail officials provide plaintiff with medicine of his choosing, including medical marijuana) (collecting cases holding same).

Sixth, plaintiff likewise fails to state an ADA or Rehabilitation Act claim to the extent predicated on the refusal to afford him medical marijuana because medical marijuana use is not protected by the ADA or the Rehabilitation Act. <u>James v. City of Costa Mesa</u>, 700 F.3d 394 (9th Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 2396 (2013) (ADA); <u>Assenberg v. Anacortes Housing Authority</u>, 268 Fed. Appx. 643, 644 (9th Cir.), <u>cert. denied</u>, 555 U.S. 850 (2008) (ADA and Rehabilitation Act); <u>Wild v. City of San Diego</u>, 2014 WL 6388500, *2 (S.D. Cal. Nov. 13, 2014) (ADA and Rehabilitation Act).

Seventh, plaintiff otherwise falls to state an ADA or Rehabilitation Act claim against the defendants in their individual capacities because such provisions do not provide a basis to sue state officials in their individual capacities. See <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1156 (9th Cir. 2002) (plaintiff cannot sue state officials in their individual capacities to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act), <u>cert. denied</u>, 537 U.S. 1104 (2003).

Eighth, the Complaint also fails to state an Equal Protection claim.  Plaintiff does not allege that he is a member of a protected class or that defendants intended to discriminate against him because of his membership in a protected class.  Nor does he allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis or compelling need for the difference in treatment.

Ninth, much of the Complaint against many of the defendants appears to be predicated solely upon such defendants' alleged improper handling of plaintiff's inmate grievances and/or appeals – which is insufficient to state a viable Section 1983 claim.  In general, a prison official's processing of an inmate's appeals, without more, cannot serve as a basis for Section 1983 liability.[8]  See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted), cert. denied, 541 U.S. 1063 (2004); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.) (due process not violated simply because defendant fails properly to process grievances submitted for consideration), cert. denied, 488 U.S. 898 (1988); see, e.g., Todd v. California Department of Corrections and Rehabilitation, 615 Fed. Appx. 415, 415 (9th Cir. 2015) (district court properly dismissed claim based on improper "processing and handling of [] prison grievances," since prisoners have no "constitutional entitlement to a specific prison grievance procedure") (quoting

_____

[8]While a prison official's alleged failure to process an inmate grievance may implicate a prisoner's First Amendment right of access to the courts, the Complaint fails to state such a claim because plaintiff does not plausibly allege that any defendant *actually failed* to process his grievances, that an actual injury resulted from any failure to process plaintiff's grievances or that any such conduct actually "hindered his efforts to pursue a [nonfrivolous] legal claim."  Lewis v. Casey, 518 U.S. 343, 351-53, 354-55 (1996) (To establish any denial of access claim, a plaintiff must show that he suffered an "actual injury" as a result of the defendants' actions.); see generally Bounds v. Smith, 430 U.S. 817, 821 (1977) (well-established that prisoners have a constitutional right of access to the courts), abrogated in part on other grounds by, Lewis, 518 U.S. at 354.

18

Ramirez, 334 F.3d at 860) (quotation marks omitted); Shallowhorn v. Molina, 572 Fed. Appx. 545, 547 (9th Cir. 2014) (district court properly dismissed Section 1983 claims against defendants who "were only involved in the appeals process") (citing Ramirez, 334 F.3d at 860).

Finally, the remaining allegations in the Complaint are otherwise prolix (*i.e.*, unnecessarily long, wordy, and tedious) and mostly amount to little more than unintelligible stream-of-consciousness rambling which, on the whole, do nothing to plausibly connect any particular act or incident to a specific legal claim against any individual defendant, and consequently are insufficient to state any viable Section 1983 claim. See Pena, 976 F.2d at 471 (citation omitted); Iqbal, 556 U.S. at 680-84 (citations omitted); see also Knapp v. Hogan, 738 F.3d 1106, 1109-10 & n.1 (9th Cir. 2013) (violations of Rule 8 "short and plain statement" requirement "warrant dismissal") (citations omitted), cert. denied, 135 S. Ct. 57 (2014); Cafasso, 637 F.3d at 1059 ("pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling" violates pleading requirements under Federal Rules of Civil Procedure) (citation and internal quotation marks omitted); Davis v. Ruby Foods, Inc., 269 F.3d 818, 820 (7th Cir. 2001) ("The dismissal of a complaint on the ground that it is unintelligible is unexceptionable."); Stewart v. Ryan, 2010 WL 1729117, at *2 (D. Ariz. Apr. 27, 2010) ("It is not the responsibility of the Court to review a rambling narrative in an attempt to determine the number and nature of a plaintiff's claims."). To the extent plaintiff suggests that he has stated a Section 1983 claim merely by referencing the Complaint exhibits, he is incorrect. It is not the Court's responsibility to sift through plaintiff's multiple exhibits in an attempt to glean whether plaintiff has an adequate basis upon which to state any other claim for relief. Cf. Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1066 (9th Cir. 2009) ("[j]udges are not like pigs, hunting for truffles buried in briefs") (citation omitted); Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir.) ("Rule 8(a) requires parties to make their

pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.") (cited with approval in <u>Knapp</u>, 738 F.3d at 1111), <u>cert. denied</u>, 540 U.S. 968 (2003).

## V.  ORDERS

In light of the foregoing, IT IS HEREBY ORDERED:

1.      The Complaint is dismissed with leave to amend.  If plaintiff intends to pursue this matter, he shall file a First Amended Complaint within twenty (20) days of the date of this Order which cures the pleading defects set forth herein.[9]  The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a First Amended Complaint if he elects to proceed in that fashion.

2.       In the event plaintiff elects not to proceed with this action, he shall sign and return the attached Notice of Dismissal by the foregoing deadline which will result in the voluntary dismissal of this action without prejudice.

**3.      Plaintiff is cautioned that, absent further order of the Court, plaintiff's failure timely to file a First Amended Complaint or Notice of Dismissal, may be deemed plaintiff's admission that amendment is futile, and**

---

[9]Any First Amended Complaint must:  (a) be labeled "First Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the original Complaint – *i.e.*, it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) present allegations in sequentially numbered paragraphs, "each limited as far as practicable to a single set of circumstances" (Fed. R. Civ. P. 10(b)); (f) state each claim founded on a separate transaction or occurrence in a separate count as needed for clarity (Fed. R. Civ. P. 10(b)); (g) set forth clearly the sequence of events giving rise to the claim(s) for relief; (h) allege specifically what each defendant did and how that defendant's conduct specifically violated plaintiff's civil rights; and (i) not change the nature of this suit by adding new, unrelated claims or defendants, <u>cf.</u> George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (civil rights plaintiff may not file "buckshot" complaints – *i.e.*, a pleading that alleges unrelated violations against different defendants).  To the extent plaintiff has erroneously referred to defendant Dr. P. Pak as "Dr. Kap," he should correct this as well and must state the names of "all the parties" in the caption of any First Amended Complaint.  Fed. R. Civ. P. 10(a).

**may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with the Court's Order.**

4.     Plaintiff's other pending motions – for order for service of process by U.S. Marshal, for costs, and for review – are denied without prejudice.  The order for service of process by U.S. Marshal is denied without prejudice to resubmission after plaintiff files a complaint which withstands screening.  The motion for costs and review (which also requests costs) are denied without prejudice to resubmission once an appropriate defendant has been properly served and has appeared in the District Court in this action.[10]

IT IS SO ORDERED.

DATED: August 3, 2017

_____
HONORABLE R. GARY KLAUSNER
UNITED STATES DISTRICT JUDGE

Attachments

---

[10]The Magistrate Judge denied plaintiff's prior applications for costs without prejudice to resubmission once an appropriate defendant had been served and had appeared in the District Court in this action.  (Docket Nos. 21, 24).  This Court agrees with and adopts such orders and the reasoning therein.