UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADONAI EL-SHADDAI, also known as James R. Wilkerson,<br><br>    Plaintiff,<br><br>v.<br><br>L.D. ZAMORA, et al.,<br><br>    Defendants. | Case No. CV 13-2327 RGK(JC)<br><br>(~~PROPOSED~~)<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND |

## I.    BACKGROUND AND SUMMARY

On April 1, 2013, Adonai El-Shaddai, also known as James R. Wilkerson ("plaintiff"), who is in custody and is proceeding *pro se*, filed an Application to Proceed In Forma Pauperis ("IFP Application") and lodged a Civil Rights Complaint ("Original Complaint"). On April 15, 2013, the Chief United States District Judge, on the recommendation of a United States Magistrate Judge, denied the IFP Application. The United States Court of Appeals for the Ninth Circuit reversed and remanded; the mandate issued on November 3, 2016. On January 12, 2017, plaintiff's IFP Application was granted in the District Court and the Original Complaint was formally filed. The matter was subsequently assigned to this Court.

///

The Original Complaint, construed very liberally, appeared to arise under 42 U.S.C. § 1983 ("Section 1983"), the Americans with Disabilities Act, 42 U.S.C. section 12101, et seq. ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"), and state law, and to claim that the defendants – sixteen individuals connected with the California State Prison, Corcoran ("CSP-COR") and the California State Prison, Los Angeles County ("CSP-LAC"), all of whom were sued in their individual and official capacities – were deliberately indifferent to plaintiff's serious medical disability in violation of the Eighth Amendment and deprived plaintiff of Equal Protection under the Fourteenth Amendment.  Plaintiff sought declaratory, injunctive and monetary relief.

On August 3, 2017, the Court screened and dismissed the Original Complaint and granted plaintiff leave to file a First Amended Complaint ("First Dismissal Order").

On October 30, 2017, plaintiff filed the First Amended Complaint[1] against six individuals sued in the Original Complaint, and two new defendants, officials with the California Department of Corrections and Rehabilitation Office of Appeals ("CDCR Appeals Office").[2]  Very liberally construed, the First Amended Complaint again appeared to arise under Section 1983, the ADA, the Rehabilitation Act, and state law, and to claim that the defendants – all of whom were sued in both their individual and official capacities – were deliberately indifferent to plaintiff's

[1]The First Amended Complaint consisted of a preprinted Civil Rights Complaint Form ("FAC Form"), a 10-page typewritten "Civil Rights Complaint" ("FAC"), and multiple exhibits.

[2]In the First Amended Complaint, plaintiff sued (1) L. D. Zamora, Chief, California Correctional Health Care Services ("CCHCS"); (2) Dr. Jeffery Wang, CSP-COR Chief Medical Executive; (3) Teresa Macias, CSP-COR Chief Executive Officer of Health Care; (4) Dr. Glenn Thiel, CSP-COR; (5) Dr. P. Pak, CSP-COR; (6) Dr. C. McCabe, CSP-COR; (7) C. Hammond, Appeals Examiner, CDCR Appeals Office; and (8) D. Foston, Chief, CDCR Appeals Office. (FAC Form at 3-4; FAC at 2).

serious medical disability in violation of the Eighth Amendment, deprived plaintiff of Equal Protection under the Fourteenth Amendment, and violated state statutes. (FAC ¶¶ 1, 41-49).  Plaintiff sought declaratory, injunctive, and monetary relief. (FAC at 9-10).

On January 9, 2018, the Court screened and dismissed the First Amended Complaint and granted plaintiff leave to file a Second Amended Complaint ("Second Dismissal Order").

On April 19, 2018, plaintiff filed the operative Second Amended Complaint[3] which, construed liberally, appears to sue a total of fourteen individuals – eight of whom were previously named in the First Amended Complaint – (1) Zamora; (2) Wang; (3) Macias; (4) Thiel; (5) Pak; (6) McCabe; (7) Hammond; and (8) Foston – and six of whom were previously named in only the Original Complaint – (9) Dr. J. Kim, CSP-LAC; (10) Dr. A. Adams, CSP-LAC Chief Physician and Surgeon; (11) Dr. C. Wu, CSP-LAC Physician and Surgeon; (12) CSP-LAC Physician's Assistant Olukamni; (13) P. Finander, Chief, Medical Executive, CSP-LAC; and (14) Dr. J. Fitter, CSP-LAC (collectively "defendants").[4] (SAC Form at 3-4; SAC at 2, SAC ¶¶ 4-6, 10).  Defendants Zamora and Wang are sued in both their individual and official capacities (SAC Form at 3), defendants Macias, Thiel, and McCabe are sued in their individual capacities only (SAC Form

---

[3]The Second Amended Complaint consists of a preprinted Civil Rights Complaint Form ("SAC Form"), an 11-page typewritten "Second Amended Complaint" ("SAC"), and multiple exhibits ("SAC Ex."). Because there are two "Exhibit A[s]" (hereinafter "SAC Ex. A1" and "SAC Ex. A2[,]" respectively) and because the pages of the Second Amended Complaint exhibits are not sequentially numbered, the Court has used the page numbering from its official Case Management/Electronic Case Filing (CM/ECF) system.

[4]Although defendants Pak and Fitter are not identified in the caption of the Second Amended Complaint (which names only defendant Zamora) and do not appear on the list of defendants therein, they are referenced as defendants in the body of the Second Amended Complaint. See SAC Form at 1 (caption); SAC Form at 3-4 (list of defendants); SAC at 1 (caption); SAC ¶¶ 4-6 (referencing "Defendant Pak"); SAC ¶ 10 (referencing "Defendant Fitter").

3

at 3-4), and plaintiff does not identify the capacity in which the other defendants are being sued (SAC Form at 4). Very liberally construed, the Second Amended Complaint again appears to arise under Section 1983, the ADA and state laws, and appears to claim that the defendants deprived plaintiff of his First Amendment right to the free exercise of his religion, were deliberately indifferent to plaintiff's serious medical disability in violation of the Eighth Amendment, deprived plaintiff of Equal Protection under the Fourteenth Amendment, and violated state statutes. (SAC ¶¶ 14-19). Plaintiff seeks declaratory, injunctive, and monetary relief. (SAC at 10-11).

Since the Second Amended Complaint is deficient in many of the same respects as its predecessors, including those detailed below, it is dismissed with leave to amend.

## II. SECOND AMENDED COMPLAINT

Liberally construed, the Second Amended Complaint alleges the following:

Plaintiff is a 61-year-old African-American Hebrew Israelite, and due to his religious beliefs, plaintiff "practice[s] African Holistic Healing which includes the Holistic Rastafarian way of life." (SAC ¶ 1).

### A. Events Relating to Plaintiff's Confinement at CSP-COR

On June 20, 2008, plaintiff received a "permanent" CDC Form 7410, Comprehensive Accommodation Chrono for Ground Floor Cell and Bottom Bunk assignment due to plaintiff's "chronic dis[c] [and] joint disease." (SAC ¶ 2).[5] On or about October 7, 2008, plaintiff was diagnosed with degenerative disc disease.[6]

---

[5]Chronos indicating "permanent" accommodations are reviewed annually. (SAC Ex. A2 at 36; SAC Ex. C at 68-69).

[6]A November 29, 2007 radiology report relating to plaintiff's knees and lumbar spine ("November 2007 Knee/Spine Report") reflects spur formation in both of his knees and bilateral irregularity of the patellar articulating surfaces and degenerative changes throughout the lumbar spine with mild to moderate disc narrowing noted at L4-5. (SAC Ex. D at 76). An October 6,

(continued...)

4

(SAC ¶ 3; SAC Ex. D at 75).  A DPP Disability/Accommodation Summary reflects that as of February 3, 2016, plaintiff had (1) housing restrictions of "Ground Floor-No Stairs" and "Lower/Bottom Bunk Only"; (2) physical limitations of "Special Cuffing Needed"; (3) Job/Other limitations of no lifting more than 19 pounds, no rooftop work, no prolonged standing or walking, no climbing or crawling, no repetitive bending, stooping or twisting, and no work at heights, around machinery, or outdoors; and (4) disability assistance requirements of durable medical cane, mobility vest, back brace, knee brace, glasses, and orthopedic shoes.  (SAC ¶ 3).

On April 18, 2011, defendant Pak saw plaintiff to treat his chronic lower back pain and his chronic arthritis, and to update plaintiff's "medical chrono's."  (SAC ¶ 4).  Plaintiff explained to defendant Pak that he believed that he had pinched a nerve in his lower back, and that he had been in severe pain for two days.  (SAC ¶ 5). Defendant Pak prescribed acetaminophen for 10 days as treatment for plaintiff's severe pain.  (SAC ¶ 5).  Defendant Pak also "denied Plaintiff['s] request to update his CDC Form 7410, Comprehensive Accommodation Chrono even though [Pak] knew it was permanent for Plaintiff['s] chronic disc and joint disease[], [and] had been prescribed."  (SAC ¶ 5; but see SAC Ex. A2 at 36 [Comprehensive Accommodation Chrono "completed by [] P. Pak[]" dated April 18, 2011]). Plaintiff was suffering substantial pain which significantly affected plaintiff's daily

_____

(...continued)
2008 report of an MRI of plaintiff's lumbar spine ("2008 Spine MRI") reflects that plaintiff suffers from hypolordosis, degenerative disc disease, an extruded disc, and multiple disc protrusions.  (SAC Ex. D at 75).  A September 1, 2009 radiology report ("September 2009 Knee Report") reflects that an examination of plaintiff's right knee revealed severe degenerative changes in the patellofermoral joint space, sclerosis of the articular surface of the patella, and mild degenerative spurs medially and laterally about the knee joint.  (SAC Ex. D at 74).  A May 13, 2011 radiology report relating to an x-ray of his lumbar spine ("May 2011 Spine Report") indicates that plaintiff has a history of low back pain with moderate degenerative disc disease and spondylosis.  (SAC Ex. D at 71-72).  A May 13, 2011 radiology report relating to an x-ray of plaintiff's left knee ("May 2011 Knee Report") indicates that plaintiff has left knee pain with mild osteoarthritis and mild patellar spur.  (SAC Ex. D at 73).

activities, and the acetaminophen defendant Pak prescribed did not aid in relieving plaintiff's severe pain.  (SAC ¶ 6).

On April 22, 2011, plaintiff submitted an Inmate Health Care Appeal Form CDCR 602-HC ("CDCR 602-HC") requesting that he be treated for what he believed to be a pinched nerve based upon previous experiences, and requesting that his lower tier and lower bunk chrono be renewed.  (SAC ¶ 7; SAC Ex. B at 38). Such appeal was supported at least by the 2008 Spine MRI.  (SAC ¶ 7; SAC Ex. B at 59).  In a First Level Appeal Response dated May 16, 2011, defendants McCabe and Thiel denied plaintiff's appeal.  (SAC ¶ 7; SAC Ex. B at 59-60).  Plaintiff was dissatisfied with this response, so he appealed to the second level of administrative review, complaining that the denial of treatment for his chronic and substantial back pain violated the Eighth Amendment.  (SAC ¶ 7; SAC Ex. B at 39, 61).  Defendants Thiel and Macias partially granted such second level appeal, and did so allegedly based upon an interview with plaintiff conducted by Dr. Yu at the first level of review.  (SAC ¶ 7; SAC Ex. B at 41).  The First Level Appeal Response, however, never mentioned such an interview, and the alleged interview by Dr. Yu, in fact, never happened.  (SAC ¶ 7; SAC Ex. B at 59-60).  Plaintiff was actually interviewed by L. Vasquez, RN, at the first level of review, not Dr. Yu.  (SAC ¶ 7; see SAC Ex. B at 59).  Still dissatisfied, plaintiff pursued a third level appeal on June 20, 2011, submitting additional medical records – at least the November 2007 Knee/Spine Report and the May 2011 Spine and Knee Reports.  (SAC ¶ 7; SAC Ex. B at 41; see supra note 6).  In a Third Level Appeal Decision dated August 1, 2011, defendants Hammond and Foston denied plaintiff's appeal without mentioning plaintiff's complaint of his severe pain and the ineffectiveness of the prescribed Tylenol, and continued erroneously to base their decision on an alleged examination by Dr. Yu which never happened.  (SAC ¶ 7; SAC Ex. B at 63-64).

6

On December 13, 2011, plaintiff filed a Health Care Services Request Form CDC 7362 ("CDC 7362") requesting, pursuant to California Health and Safety Code sections 11362.785(b) and 11362.71(b)(1)-(2), an application to join the identification card program of the California Compassionate Use Act of 1996 mandated by statute.[7] (SAC ¶ 8; SAC Ex. B at 50). Plaintiff's CDC 7362 request was denied. (SAC ¶ 8).

On December 21, 2011, plaintiff submitted a CDCR 602-HC Inmate Appeal requesting an application to join the identification card program of the Compassionate Use Act of 1996 to permit him to receive marijuana treatment for his chronic back pain and osteoarthritis. (SAC ¶ 8; SAC Ex. B at 46A).[8] On

---

[7]California Health and Safety Code section 11362.5 – the Compassionate Use Act of 1996 – states the findings and declarations of the people of the State of California regarding the purposes of such Act and reflects that one such purpose is:

> To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.

Cal. Health & Safety Code § 11362.5(b)(1)(A). Sections 11362.71(b)(1)-(2) essentially call for every county health department or designee to provide applications upon request to individuals seeking to join a voluntary program for issuance of identification cards to qualified patients, and to receive and process such applications. Section 11362.785, as pertinent here, essentially provides that (1) nothing therein requires any accommodation of medicinal use of cannabis in penal institutions (Section 11362.785(a)); (2) notwithstanding the foregoing, a person shall not be prohibited or prevented from obtaining and submitting the written information and documentation necessary to apply for an identification card on the basis that he/she is confined in a penal institution (Section 11362.785(b)); and (3) nothing therein prohibits a penal institution from permitting a prisoner with an identification card to use cannabis for medicinal purposes under circumstances that will not endanger the health or safety of other prisoners or the security of the facility (Section 11362.785(c)).

[8]The Court has assigned page "46A" to the referenced page because such page appears in the hard copy of plaintiff's Second Amended Complaint between pages 46 and 47 but apparently

(continued...)

February 3, 2012, defendant McCabe denied such appeal at the first level of administrative review stating, in part,

> [Y]our medical condition does not warrant the use of medical marijuana [as] treatment for your chronic back pain and osteoarthritis. This case was presented to the pain committee which resulted in the pain committee declaring that there is no medical justification for medical marijuana treatment. This request was denied based on objective finding which is based on medical practice.

(SAC ¶ 8; SAC Ex. B at 46-47, 55).

Dissatisfied, plaintiff appealed to the second level of review, complaining that the denial of such appeal violated the ADA, the Eighth Amendment, and the Compassionate Use Act. (SAC ¶ 8; SAC Ex. B at 46-47). In a February 24, 2012, Institution Response for Second Level HC Appeal, defendants Wang and Macias denied plaintiff's second level appeal explaining to plaintiff, in pertinent part:

> As part of the [review] process, you [] had a pain intake done by your doctor. You also had a mental health evaluation and physical therapy evaluation done. These three reports along with your medical and C-files were carefully reviewed. The [pain] committee weighed all of the evidence and recommended that no opiates or gabapentin be prescribed. This also includes marijuana. It was noted that in the past you have abused glue, alcohol, marijuana, PCP, and IV heroin. It is not in your best interests to give you any substance which you have abused. It is noted that you admit to doing burpees, even after you were advised by the physical therapist to stop. You have been noncompliant with the proper exercises given to you by physical

---

[8](...continued)
was inadvertently not scanned and included in the version of the Second Amended Complaint on the docket/in CM/ECF. A copy of such page is attached.

therapy which are intended to help strengthen you[r] back.  You are currently receiving Tylenol for your pain issue which is appropriate for your arthritis and Degenerative Dis[c] issues.

(SAC ¶ 8; SAC Ex. B at 53-54).  Plaintiff does not have a history of substance abuse, has not been convicted and placed in a substance abuse program, and does not have a history of opiates or gabapentin treatment.  (SAC ¶ 8).

Dissatisfied, plaintiff pursued a third level appeal on March 8, 2012, complaining that (1) he had never abused glue, alcohol, marijuana, PCP or IV heroin and did not have a record of drug abuse of any kind; (2) although during his initial mental health evaluation in 1979 plaintiff admitted to experimenting with glue, PCP and heroin, and admitted to social use of alcohol and marijuana, he never abused drugs in his life and the mental health records reflecting otherwise are false; (3) he had, in fact, complied with the physical therapist's advice to stop doing burpees; and (4) other documented drug abusers were being treated with opiates and gabapentin which evidenced "a discriminatory practice and policy and deliberate indifference against [plaintiff]."  (SAC ¶ 8; SAC Ex. B at 46-47, 49).  On June 13, 2012, defendant Zamora denied plaintiff's third level appeal, finding no compelling evidence warranted intervention as plaintiff's medical condition had been evaluated by licensed clinical staff and plaintiff was receiving treatment deemed medically necessary.  (SAC ¶ 8; SAC Ex. B at 51).

**B.      Events Relating to Plaintiff's Confinement at CSP-LAC**

Plaintiff was transferred to CSP-LAC on March 23, 2012.  (SAC ¶ 9).

On April 2, 2012, defendant Kim saw plaintiff and denied plaintiff's request to renew a permanent chrono for ground-floor cell/bottom bunk, back brace, knee brace, orthopedic shoes, cotton bedding, cane and mobility impaired vest.  (SAC ¶ 10).  On April 4, 2012, plaintiff filed an appeal.  (SAC ¶ 10).  On May 11, 2012, defendant Fitter interviewed plaintiff, observed plaintiff walk without pause, assistance, or assistive device from the housing unit across the yard to a reception

clinic, and thus determined that plaintiff did not need the referenced permanent chrono renewed without a physical examination. (SAC ¶ 10).

On April 6, 2012, while exercising plaintiff felt the discs in his lower back shift, began to feel severe pain, and felt his lower back swell until plaintiff could barely stand or walk. (SAC ¶ 11). Plaintiff was taken by ambulance to the triage and treatment area where he was seen by defendant Olukamni. (SAC ¶ 11). Defendant Olukamni entered the emergency area laughing and joking about performing a rectal exam and prepared to do so without questioning plaintiff regarding his medical condition. (SAC ¶ 11). Defendant Olukamni asked plaintiff to pull his pants down and lie down on the table. (SAC ¶ 11). When plaintiff inquired as to what a rectal exam had to do with back pain, defendant Olukamni responded that he had received a call indicating the plaintiff could not walk, and that he needed to see if plaintiff was paralyzed. (SAC ¶ 11). Plaintiff, who was sitting in a wheelchair, explained that the severe pain in his low back was the reason he could not walk. (SAC ¶ 11). Defendant Olukamni told plaintiff "if he was there for drugs, he had come to the wrong place, and that the only thing plaintiff was getting was a rectal exam." (SAC ¶ 11). When defendant Olukamni asked if plaintiff was refusing treatment, plaintiff said "no." (SAC ¶ 11). Defendant Olukamni then gave plaintiff a rectal exam but performed no other examination and gave plaintiff no treatment. (SAC ¶ 11).

On April 11, 2012, plaintiff filed a staff complaint against defendant Olukamni alleging "denial of adequate medical treatment and what [p]laintiff view[ed] to be unprofessional and criminal conduct." (SAC ¶ 12). The staff complaint was partially granted in that a confidential inquiry was conducted without details of the inquiry being disclosed. (SAC ¶ 12). Defendants Adams and Finander (who apparently reviewed the staff complaint), further stated that the standard of care when a patient complained of acute back pain with reported inability to walk is a rectal exam to rule out "caude equina syndrome." (SAC ¶ 12).

"Plaintiff alleges that defendant Olukamni could have checked the reflexes in his knees [or] ankles to determine whether or not he was suffering from 'caude equina syndrome.'" (SAC ¶ 12). At the third level of review, defendant Zamora upheld the determination by defendants Adams and Finander. (SAC ¶ 12).

## III. PERTINENT LEGAL STANDARDS

### A. The Screening Requirement

As plaintiff is a prisoner proceeding IFP on a civil rights complaint against governmental defendants, the Court must screen the Second Amended Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Department, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

When screening a complaint to determine whether it states any claim that is viable (*i.e.*, capable of succeeding), the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing id. at 555). In addition,

under Rule 10 of the Federal Rules of Civil Procedure, a complaint, among other things, must (1) state the names of "all the parties" in the caption; (2) state a party's claims in sequentially "numbered paragraphs, each limited as far as practicable to a single set of circumstances"; and (3) where "doing so would promote clarity," state "each claim founded on a separate transaction or occurrence . . . in a separate count . . . ." Fed. R. Civ. P. 10(a), (b).

To avoid dismissal on screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Byrd, 885 F.3d at 642 (9th Cir. 2018) (citations omitted); see also Johnson v. City of Shelby, Mississippi, 135 S. Ct. 346, 347 (2014) (per curiam) (Twombly and Iqbal instruct that plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility"). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted); see also Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule 8 pleading requirements) (emphasis added); Chappell v. Newbarth, 2009 WL 1211372, *3 (E.D. Cal. May 1, 2009) ("[A] complaint must put each defendant on notice of Plaintiff's claims against him or her, and their factual basis.") (citing Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004)). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

At the screening stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and

quotation marks omitted); <u>Jackson v. Barnes</u>, 749 F.3d 755, 763 (9th Cir. 2014)

("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting <u>id.</u>),

<u>cert. denied</u>, 135 S. Ct. 980 (2015).  In addition, the Court is "not required to accept

as true conclusory allegations which are contradicted by documents referred to in

the complaint," <u>Steckman v. Hart Brewing, Inc.</u>, 143 F.3d 1293, 1295-96 (9th Cir.

1998) (citation omitted), and "need not [] accept as true allegations that contradict

matters properly subject to judicial notice or by exhibit," <u>Sprewell v. Golden State

Warriors</u>, 266 F.3d 979, 988 (9th Cir.), <u>amended on denial of reh'g</u>, 275 F.3d 1187

(9th Cir. 2001) (citation omitted).

In general, civil rights complaints are interpreted liberally in order to give *pro
se* plaintiffs "the benefit of any doubt."  <u>Byrd</u>, 885 F.3d at 642 (citations and

internal quotation marks omitted).  Nonetheless, a *pro se* plaintiff must still follow

the rules of procedure that govern all litigants in federal court, including the Rule 8

requirement that a complaint minimally state a short and plain statement of a

plausible claim.  <u>See</u> <u>Ghazali v. Moran</u>, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam)

("Although we construe pleadings liberally in their favor, pro se litigants are bound

by the rules of procedure.") (citation omitted); <u>see also</u> <u>Chapman v. Pier 1 Imports

(U.S.) Inc.</u>, 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation

of a . . .  civil rights complaint may not supply essential elements of [a] claim that

were not initially pled.") (quoting <u>Pena v. Gardner</u>, 976 F.2d 469, 471 (9th Cir.

1992)) (quotation marks omitted; ellipses in original).

If a *pro se* complaint is dismissed for failure to state a claim, the court must

"freely" grant leave to amend (that is, give the plaintiff a chance to file a new,

corrected complaint) if it is "at all possible" that the plaintiff could correct the

pleading errors in the complaint by alleging "other facts."  <u>Cafasso v. General

Dynamics C4 Systems, Inc.</u>, 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted);

<u>Lopez v. Smith</u>, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citation and

quotation marks omitted).

**B.    Section 1983 Claims**

To state a claim under Section 1983, a plaintiff must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights.  42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).  There is no vicarious liability in Section 1983 lawsuits.  Iqbal, 556 U.S. at 676 (citing, *inter alia*, Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978)).  Hence, a government official – whether subordinate or supervisor – may be held liable under Section 1983 only when his or her own actions have caused a constitutional deprivation.  OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing id.), cert. denied, 571 U.S. 816 (2013).  Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).

An individual "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury."  Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks omitted).

Similarly, a government official may be held individually liable under Section 1983 for acts taken in a supervisory capacity, but only when the supervisor's own misconduct caused an alleged constitutional deprivation.  See Iqbal, 556 U.S. at 676, 677; OSU Student Alliance, 699 F.3d at 1069 (citing id. at 676).  A supervisor "causes" a constitutional deprivation for purposes of Section 1983 liability, if he or she (1) personally participates in or directs a subordinate's

14

constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct.  See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), cert. denied, 566 U.S. 982 (2012).

### C.    First Amendment – Free Exercise of Religion

Prisoners "retain protections afforded by the First Amendment" including the right to "the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted), superseded by statute on other grounds, 42 U.S.C. §§ 2000cc, et seq.  However, as a consequence of incarceration, a prisoner's First Amendment rights are necessarily "more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229 (2001).  An inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974).

To state a First Amendment free exercise claim, an inmate must allege that a prison official's actions (1) "substantially burden[ed]" the inmate's exercise of a sincerely held religious belief; and (2) did so in an unreasonable manner – *i.e.*, the official's actions were not "rationally related to legitimate penological interests." See O'Lone, 482 U.S. at 348-50; Jones v. Williams, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015) (citation omitted); Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (citations omitted).  "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs." Jones v. Williams, 791 F.3d at 1031-33 (citations omitted).

///

///

## D.     Eighth Amendment – Deliberate Indifference to Serious Medical Needs

Prison officials violate the Eighth Amendment when they respond with deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103-05 (1976) (citations and footnotes omitted).

An inmate's medical need is sufficiently "serious" if, objectively, the failure to treat it "will result in significant injury or the unnecessary and wanton infliction of pain." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (citations and internal quotation marks omitted), cert. denied, 135 S. Ct. 946 (2015). Such medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. . . ." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991) (citations omitted), overruled on other grounds by WMX Technologies, Inc., v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official acts with deliberate indifference when the official is subjectively aware of, but *purposefully* ignores or fails to respond to an "excessive risk to inmate health" (*i.e.*, a serious medical need). Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (citations omitted). A defendant's alleged indifference must be "substantial." Estelle, 429 U.S. at 105-06; Lemire v. California Department of Corrections and Rehabilitation, 726 F.3d 1062, 1081-82 (9th Cir. 2013) (citations omitted). A prison doctor's mistake, negligence, or malpractice does not establish deliberate indifference to serious medical needs. Estelle, 429 U.S. at 105-06. "Even gross negligence is insufficient . . . ." Lemire, 726 F.3d at 1082 (citation omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

///

also draw the inference." Colwell, 763 F.3d at 1066 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)) (quotation marks omitted).

A prisoner need not prove that he or she was completely denied medical care. Lopez, 203 F.3d at 1132. Rather, deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05 (footnotes omitted). Mere disagreement with a defendant's professional judgment concerning what medical care is most appropriate under the circumstances, however, is insufficient to show deliberate indifference. Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted). Hence, the medical care a defendant provided to an inmate amounts to deliberate indifference only if the doctor chose a course of treatment that "was medically unacceptable under the circumstances" and did so "in conscious disregard of an excessive risk to plaintiff's health." Colwell, 763 F.3d at 1068 (citations and internal quotation marks omitted).

As noted above, where a plaintiff seeks to hold a prison official personally liable for damages, the plaintiff must establish a causal link between the particular defendant's deliberate indifference and the constitutional deprivation alleged. Leer, 844 F.2d at 633-34.

### E. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985), abrogated on other grounds as explained in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002). A Section 1983 claim predicated on an equal protection violation may be alleged, in pertinent part, under two theories. First, a plaintiff may state an equal protection claim by alleging that he was intentionally discriminated against based upon his membership in a protected class. See, e.g., Lee v. City of Los Angeles,

17

250 F.3d 668, 686 (9th Cir. 2001), <u>implicitly abrogated in part on other grounds as explained in</u> <u>Galbraith</u>, 307 F.3d at 1125-26; <u>see also</u> <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (9th Cir. 2005).  Alternatively, if the challenged action did not involve a suspect classification, a plaintiff may still state an equal protection claim essentially by alleging that:  (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.  <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>San Antonio Independent School District v. Rodriguez</u>, 411 U.S. 1 (1972); <u>SeaRiver Maritime Financial Holdings, Inc. v. Mineta</u>, 309 F.3d 662, 679 (9th Cir. 2002).

An Equal Protection Clause violation does not arise from a prison's uniform "anti-marijuana" policy that is applied to all inmates.  <u>See</u> <u>Harris v. Lake County Jail</u>, 2012 WL 1355732, *8 (N.D. Cal. Apr. 18, 2012) (dismissing Equal Protection Clause claim for failure to state a claim where County's uniform "anti-marijuana" policy" applied to all inmates).

### F. ADA

To state a claim for violation of Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of his disability.  <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1105 (2003).  The ADA does not provide a basis to sue state officials in their individual capacities.  <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1156 (9th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1104 (2003).  The treatment or lack of medical treatment for a plaintiff's condition does not provide a basis upon which to impose liability under the ADA.  <u>Burger v. Bloomberg</u>, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions not basis for ADA claims); <u>Bryant v. Madigan</u>, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical

malpractice."). Medical marijuana use is not protected by the ADA. <u>James v. City of Costa Mesa</u>, 700 F.3d 394 (9th Cir. 2012), <u>cert. denied</u>, 569 U.S. 994 (2013).

## IV.  DISCUSSION

Here, as discussed more fully below, plaintiff has done little to correct the significant pleading deficiencies in the Original and First Amended Complaints.

First, the Second Amended Complaint violates Rule 10 at least because it does not name all of the defendants in the caption and is subject to dismissal on such basis alone. <u>See</u> Fed. R. Civ. P. 10(a); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1263 (9th Cir.), <u>as amended</u> (May 22, 1992) (affirming dismissal of action based on failure to comply with court order that complaint be amended to name all defendants in caption as required by Rule 10(a)), <u>cert. denied</u>, 506 U.S. 915 (1992).

Second, to the extent plaintiff again sues defendants in their official capacities for damages, the Second Amended Complaint fails to state a Section 1983 claim. As the Court previously explained, a suit against a public employee in his or her official capacity is equivalent to a claim against the defendant's employer, <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985); <u>Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Department</u>, 533 F.3d 780, 799 (9th Cir. 2008), <u>cert. denied</u>, 555 U.S. 1098 (2009), which here is the State of California. <u>Brown v. California Department of Corrections</u>, 554 F.3d 747, 752 (9th Cir. 2009); <u>Lucas v. Department of Corrections</u>, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). The Eleventh Amendment bars damages claims in federal court against a state official in his or her official capacity where, like here, the state has not waived, and Congress has not overridden the state's immunity. <u>See</u> <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 66-71 (1989) (citations omitted); <u>Papasan v. Allain</u>, 478 U.S. 265, 276-77 (1986) (citations omitted); Dittman v. State of California, 191 F.3d 1020, 1025-26 (9th Cir. 1999) (citations omitted), <u>cert. denied</u>, 530 U.S. 1261 (2000).

///

Third, even with the most generous interpretation, the Second Amended Complaint appears to assert basically the same claims predicated on the same set of core facts as plaintiff alleged in the Original and/or First Amended Complaints. Thus, the Court finds that the Second Amended Complaint fails to state a viable federal claim for essentially the same reasons explained at length in the First and Second Dismissal Orders, the analysis in which is incorporated by reference herein. (See First Dismissal Order at 14-19; Second Dismissal Order at 15-20).

Finally, also like its predecessors, the Second Amended Complaint otherwise contains cryptic, conclusory, convoluted and, at times, unintelligible rambling which does nothing to frame plaintiff's claims with the simplicity, conciseness, and clarity required by Rule 8. In short, in the Second Amended Complaint plaintiff still never clearly or plausibly connects any particular event or incident to any specific legal claim against any particular defendant as required to survive screening. For example, plaintiff's facts section contains multiple conclusory allegations that two or more defendants acted collectively to injure plaintiff. (See, e.g., SAC ¶¶ 8, 12, 16, 17). As the Court explained before, however, such allegations against an indistinguishable group of defendants do not demonstrate a causal link between any *individual* defendant's conduct and an alleged constitutional violation, and therefore are insufficient to state a viable Section 1983 claim against any specific defendant. See Baker v. McCollan, 443 U.S. 137, 142 (1979) ("[A] public official is liable under [Section] 1983 only 'if he *causes* the plaintiff to be subjected to a deprivation of his constitutional rights.'") (citation omitted; emphasis in original); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]"); Taylor, 880 F.2d at 1045 ("Liability under section 1983 arises only upon a showing of personal participation by the defendant."); Chappell, 2009 WL 1211372, at *3 ("Generic identifiers such as 'Defendants,' 'the Defendants,' and

'others' (without surname specificity) are insufficient to link a specific defendant to offending actions and will not suffice to place any Defendant on notice of Plaintiff's claims so as to prepare a defense.") (citation omitted); see also Pena, 976 F.2d at 471 (Vague and conclusory allegations of official participation in civil rights violations are not sufficient to state a claim under Section 1983) (citing Ivey v. Board of Regents of University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)); Iqbal, 556 U.S. at 680-84 (conclusory allegations in complaint which amount to nothing more than a "formulaic recitation of the elements" are insufficient under pleading standard in Fed. R. Civ. P. 8) (citations omitted).

Likewise, to the extent comprehensible at all, the claims asserted in the Second Amended Complaint are mostly a mishmash of conclusory legal and/or factual allegations which, at best, effectively asserts that all "defendants" collectively caused plaintiff's injuries. (SAC ¶¶ 14-19). None of plaintiff's six causes of action identifies which specific defendant(s) are intended to be sued therein or adequately sets apart individual claims to the extent each is founded on a different transaction or occurrence. Nor do such claims provide a clear, concise, and simple description for each alleged constitutional deprivation of the specific act or acts each individual defendant allegedly did which caused each such deprivation. In fact, plaintiff's first cause of action contains no specific claim at all. (SAC ¶ 14) (citing SAC ¶ 1). To the extent it is intended to assert a First Amendment Free Exercise Clause claim, it is woefully deficient. See, e.g., Harris v. Lake County, 2016 WL 107488, *4 (N.D. Cal. Jan. 11, 2016) (dismissing First Amendment Free Exercise Clause claim for failure to state a claim as "it is beyond question that correctional institutions have a legitimate penological interest in regulating marijuana as a controlled substance, an illicit drug, and/or as contraband in their facilities"). To confuse matters further, plaintiff's five other causes of action each incorporates a preceding paragraph from the Second Amended Complaint which itself sweepingly incorporates *all* of the allegations from one of plaintiff's prior

21

complaints – directly contrary to the Court's admonition (Second Dismissal Order at 21 n.8) that any Second Amended Complaint must "be complete in and of itself and not refer in any manner to the Original Complaint or First Amendment Complaints". (See SAC ¶¶ 15, 18 (citing SAC ¶ 7 [noting, in part, "[p]laintiff incorporate[s] by reference in its entirety [the] First Amended Complaint."]); SAC ¶¶ 16, 17 (citing SAC ¶ 8 [noting, in part, "[p]laintiff incorporates by reference the First Amended Complaint. . ."]); SAC ¶ 19 (citing, in part, SAC ¶ 13 ["Plaintiff incorporate[s] by reference Comp. Memo and supporting documents in its entirety in support of this Amended Complaint."])). As a result, plaintiff's causes of action technically assert every claim against every defendant predicated on every fact alleged in one or the other of plaintiff's prior complaints.

Ultimately, it is all but impossible to discern precisely who plaintiff intends to sue and on what theory without literally guessing as to which facts could support a potential legal claim against any particular defendant. As the Court previously explained, however, to state a viable Section 1983 individual capacity claim plaintiff must, at a minimum, allege facts which demonstrate the specific acts each individual defendant did and how that individual's alleged misconduct specifically violated plaintiff's constitutional rights. In the end, the metaphorical "spaghetti approach" the Second Amended Complaint appears to take – i.e., throwing all of plaintiff's allegations into a single pleading and hoping that some viable claim sticks – thoroughly fails to do so. Cf. Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1066 (9th Cir. 2009) ("[j]udges are not like pigs, hunting for truffles buried in briefs") (citation omitted); Independent Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (declining to "sort though the noodles" of plaintiff's "spaghetti approach" briefing in order to locate a valid claim) (citation omitted); Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir.) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.") (cited with approval in

22

Knapp v. Hogan, 738 F.3d 1106, 1111 (9th Cir. 2013), cert. denied, 135 S. Ct. 57 (2014)), cert. denied, 540 U.S. 968 (2003); see generally Stewart v. Ryan, 2010 WL 1729117, at *2 (D. Ariz. Apr. 27, 2010) ("It is not the responsibility of the Court to review a rambling narrative in an attempt to determine the number and nature of a plaintiff's claims.").

In light of at least the multiple pleading deficiencies identified above, the Second Amended Complaint must be dismissed. Cf. McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996) (complaint subject to dismissal under Rule 8 if "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery."); Sparling v. Hoffman Construction Company, Inc., 864 F.2d 635, 640 (9th Cir. 1988) (complaint that contains factual elements of cause of action scattered throughout complaint and not organized into "short and plain statement of the claim" may be dismissed for failure to satisfy Rule 8(a)); see also Knapp, 738 F.3d at 1109-10 & n.1 (violations of Rule 8 "short and plain statement" requirement "warrant dismissal") (citations omitted); Cafasso, 637 F.3d at 1059 ("pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling" violates pleading requirements under Federal Rules of Civil Procedure) (citation and internal quotation marks omitted).

Finally, to the extent plaintiff intends to raise claims under state law, the Court finds it would not be appropriate to exercise supplemental jurisdiction over such claims in the instant case where the Second Amended Complaint fails to state any viable federal claim over which this Court has original subject matter jurisdiction. See 28 U.S.C. § 1367(c)(3) (district court may decline supplemental jurisdiction over claim where "court has dismissed all claims over which it has original jurisdiction"); Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) (recognizing district court's discretion to decide whether to exercise supplemental jurisdiction over state-law claims after district court dismissed "every

claim over which it had original jurisdiction") (citations omitted); <u>Lacey</u>, 693 F.3d at 940 (district court must affirmatively indicate that it has exercised its discretion to decide whether to keep state claims in federal court after all federal claims have been dismissed); <u>see, e.g.</u>, <u>Acri v. Varian Associates, Inc.</u>, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (citation and quotation marks omitted).

## V. ORDERS

In light of the foregoing, IT IS HEREBY ORDERED:

1. The Second Amended Complaint is dismissed, and plaintiff is granted ***one final opportunity*** to amend to correct his pleading. Hence, if plaintiff intends to pursue this matter, he shall file a Third Amended Complaint within twenty (20) days of the date of this Order which cures the pleading defects set forth herein.[9] The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a Third Amended Complaint if he elects to proceed in that fashion.

///

---

[9] Any Third Amended Complaint must: (a) be labeled "Third Amended Complaint"; (b) be complete in and of itself and **not** refer in any manner to the Original, First, or Second Amended Complaints – *i.e.*, it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) present allegations in sequentially numbered paragraphs, "each limited as far as practicable to a single set of circumstances" (Fed. R. Civ. P. 10(b)); (f) state each claim founded on a separate transaction or occurrence in a separate count as needed for clarity (Fed. R. Civ. P. 10(b)); (g) set forth clearly the sequence of events giving rise to the claim(s) for relief; (h) allege specifically what *each* defendant did and how *each* such defendant's conduct specifically violated plaintiff's civil rights; and (i) not change the nature of this suit by adding new, unrelated claims or defendants, cf. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (civil rights plaintiff may not file "buckshot" complaints – *i.e.*, a pleading that alleges unrelated violations against different defendants).

2.      If plaintiff does not intend to proceed with this action, he shall sign and return the attached Notice of Dismissal by the foregoing deadline which will result in the voluntary dismissal of this action without prejudice.

**3.      Plaintiff is cautioned that, absent further order of the Court, plaintiff's failure timely to file a Third Amended Complaint or Notice of Dismissal, may be deemed plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice, and without further proceedings, on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute, and/or for failure to comply with the Court's Order.**

IT IS SO ORDERED.

DATED: June 27, 2018

_____

HONORABLE R. GARY KLAUSNER
UNITED STATES DISTRICT JUDGE

Attachments