UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADONAI EL-SHADDAI, also known as James R. Wilkerson, <br><br> Plaintiff, <br><br> v. <br><br> L.D. ZAMORA, et al., <br><br> Defendants. | Case No. CV 13-2327 RGK(JC) <br><br><br> MEMORANDUM OPINION AND ORDER DISMISSING THIRD AMENDED COMPLAINT AND ACTION |

## I.    BACKGROUND AND SUMMARY

On April 1, 2013, Adonai El-Shaddai, also known as James R. Wilkerson ("plaintiff"), who is in custody and is proceeding *pro se*, filed an Application to Proceed In Forma Pauperis ("IFP Application") and lodged a Civil Rights Complaint ("Original Complaint"). On April 15, 2013, the Chief United States District Judge, on the recommendation of a United States Magistrate Judge, denied the IFP Application based upon 28 U.S.C. § 1915(g), the three strikes provision of the Prison Litigation Reform Act of 1995. The United States Court of Appeals for the Ninth Circuit reversed and remanded, finding that plaintiff had not incurred three strikes. The mandate issued on November 3, 2016. On January 12, 2017, plaintiff's IFP Application was granted in the District Court and the Original Complaint was formally filed. The matter was subsequently assigned to this Court.

The Original Complaint, construed very liberally, appeared to arise under 42 U.S.C. § 1983 ("Section 1983"), the Americans with Disabilities Act, 42 U.S.C. section 12101, et seq. ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"), and state law, and to claim that the defendants – sixteen individuals connected with the California State Prison, Corcoran ("CSP-COR") or the California State Prison, Los Angeles County ("CSP-LAC"), all of whom were sued in their individual and official capacities – were deliberately indifferent to plaintiff's serious medical disability in violation of the Eighth Amendment and deprived plaintiff of Equal Protection under the Fourteenth Amendment.[1] Plaintiff sought declaratory, injunctive and monetary relief. On August 3, 2017, the Court screened and dismissed the Original Complaint and granted plaintiff leave to file a First Amended Complaint ("First Dismissal Order").

On October 30, 2017, plaintiff filed the First Amended Complaint against six individuals sued in the Original Complaint, and two new defendants, officials with the California Department of Corrections and Rehabilitation Office of Appeals ("CDCR Appeals Office").[2] Very liberally construed, the First Amended

---

[1]The Original Complaint consisted of a preprinted Civil Rights Complaint Form ("OC Form"), a 14-page typewritten "Civil Rights Complaint" ("OC"), and multiple exhibits. In the Original Complaint, plaintiff sued (1) L. D. Zamora, Chief, California Correctional Health Care Services ("CCHCS"); (2) Dr. Jeffery Wang, CSP-COR Chief Medical Executive; (3) Teresa Macias, CSP-COR Chief Executive Officer of Health Care; (4) Dr. Glenn Thiel, CSP-COR; (5) Dr. P. Pak, CSP-COR; (6) Dr. C. McCabe, CSP-COR; (7) Dr. Nguyen, CSP-COR; (8) Dr. Edger Clark, Secretary, CSP-COR Pain Committee; (9) Psychologist/Dr. Ruff, CSP-COR; (10) Physical Therapist Burr, CSP-COR; (11) Dr. A. Adams, CSP-LAC Chief Physician and Surgeon; (12) P. Shank, Chef Executive Officer, CSP-LAC Health Care; (13) Dr. C. Wu, CSP-LAC Physician and Surgeon; (14) P. Finander, Chief, Medical Executive, CSP-LAC; (15) Dr. J. Fitter, CSP-LAC; and (16) CSP-LAC Physician's Assistant Olukamni (alternatively spelled by plaintiff as "Olukanni"). (OC Form at 1, 3-4D; OC at 1-3).

[2]The First Amended Complaint consisted of a preprinted Civil Rights Complaint Form ("FAC Form"), a 10-page typewritten "Civil Rights Complaint" ("FAC"), and multiple exhibits.
(continued...)

Complaint again appeared to arise under Section 1983, the ADA, the Rehabilitation Act, and state law, and to claim that the defendants – all of whom were sued in both their individual and official capacities – were deliberately indifferent to plaintiff's serious medical disability in violation of the Eighth Amendment, deprived plaintiff of Equal Protection under the Fourteenth Amendment, and violated state statutes. (FAC ¶¶ 1, 41-49).  Plaintiff sought declaratory, injunctive, and monetary relief. (FAC at 9-10).  On January 9, 2018, the Court screened and dismissed the First Amended Complaint and granted plaintiff leave to file a Second Amended Complaint ("Second Dismissal Order").

On April 19, 2018, plaintiff filed a Second Amended Complaint which, construed liberally, appeared to sue a total of fourteen individuals connected with CSP-COR, CSP-LAC, or the CDCR Appeals Office, including one new defendant who was not named in any of the predecessor complaints.[3]  Very liberally construed, the Second Amended Complaint again appeared to arise under Section 1983, the ADA and state laws, and appeared to claim that the defendants deprived plaintiff of his First Amendment right to the free exercise of his religion, were deliberately indifferent to plaintiff's serious medical disability in violation of the Eighth Amendment, deprived plaintiff of Equal Protection under the Fourteenth

_____

(...continued)
In the First Amended Complaint, plaintiff sued (1) Zamora; (2) Wang; (3) Macias; (4) Thiel; (5) Pak; (6) McCabe; (7) C. Hammond, Appeals Examiner, CDCR Appeals Office; and (8) D. Foston, Chief, CDCR Appeals Office.  (FAC Form at 3-4; FAC at 2).

[3]The Second Amended Complaint consisted of a preprinted Civil Rights Complaint Form ("SAC Form"), an 11-page typewritten "Second Amended Complaint" ("SAC"), and multiple exhibits.  In the Second Amended Complaint, plaintiff sued (1) Zamora; (2) Wang; (3) Macias; (4) Thiel; (5) Pak; (6) McCabe; (7) Hammond; (8) Foston; (9) Adams (10) Wu; (11) Olukamni; (12) Finander; (13) Fitter; and (14)  Dr. J. Kim, CSP-LAC.  (SAC Form at 3-4; SAC at 2, SAC ¶¶ 4-6, 10).  Defendants Zamora and Wang were sued in both their individual and official capacities (SAC Form at 3), defendants Macias, Thiel, and McCabe were sued in their individual capacities only (SAC Form at 3-4), and plaintiff did not identify the capacity in which the other defendants were sued (SAC Form at 4).

3

Amendment, and violated state statutes. (SAC ¶¶ 14-19). Plaintiff sought declaratory, injunctive, and monetary relief. (SAC at 10-11). On June 27, 2018, the Court screened and dismissed the Second Amended Complaint and granted plaintiff what it expressly described as one final opportunity to amend to correct his pleading ("Third Dismissal Order").

On August 31, 2018, plaintiff filed the operative Third Amended Complaint[4] which, construed liberally, appears to sue a total of sixteen individuals connected with CSP-COR, CSP-LAC, or the CDCR Appeals Office – including one new defendant who was not named in any of the predecessor complaints: (1) Zamora; (2) Wang; (3) Macias; (4) Thiel; (5) Pak; (6) McCabe; (7) Adams; (8) Wu; (9) Finander; (10) Fitter; (11) Olukamni; (12) Kim;[5] (13) Nguyen; (14) Clark; (15) Shank; and (16) Dr. J. Marcelo, CSP-LAC (collectively "defendants"). (TAC Form at 3-4; TAC at 1, TAC ¶ 10). Defendants Zamora, Wang, Thiel, and Pak are sued in both their individual and official capacities (TAC Form at 3), defendant Macias is sued in an individual capacity only (TAC Form at 3), and plaintiff does not identify the capacity in which the other defendants are sued (TAC Form at 4; TAC ¶ 10). Very liberally construed, the Third Amended Complaint again arguably appears to arise under Section 1983, the ADA and state laws, and to claim that the defendants deprived plaintiff of his First Amendment right to the free exercise of

---

[4]The Third Amended Complaint consists of a preprinted Civil Rights Complaint Form ("TAC Form"), an 11-page typewritten "Third Amended Complaint" ("TAC"), and over sixty pages of exhibits ("TAC Ex."). Because there are two "Exhibit A[s]" (hereinafter "TAC Ex. A1" and "TAC Ex. A2[,]" respectively) and because the pages of the Third Amended Complaint exhibits are not sequentially numbered, the Court uses the page numbering from its official Case Management/Electronic Case Filing (CM/ECF) system.

[5]Although defendant Kim is not identified in the caption of the Third Amended Complaint and does not appear on the list of defendants in the TAC, Kim is twice referenced as a defendant in the body of the Third Amended Complaint. Compare TAC Form at 1 (caption omitting Kim), TAC Form at 3-4 (list of defendants omitting Kim), TAC at 1 (caption omitting Kim) with TAC ¶¶ 10, 14 (referencing "Defendant[]. . . Kim").

his religion, were deliberately indifferent to plaintiff's serious medical disability in violation of the Eighth Amendment, deprived plaintiff of Equal Protection under the Fourteenth Amendment, and violated state statutes. (TAC ¶¶ 20-25). Plaintiff seeks declaratory, injunctive, and monetary relief. (TAC at 10-11).

For the reasons explained below, the Third Amended Complaint – which suffers from many of the same defects as its predecessors and fails to state a federal claim upon which relief may be granted – is dismissed without further leave to amend and this action is dismissed with prejudice as to plaintiff's federal claims and without prejudice as to plaintiff's state law claims over which this Court declines to exercise supplemental jurisdiction.

## II.  THIRD AMENDED COMPLAINT

Liberally construed, the Third Amended Complaint makes the following non-conclusory factual allegations:

Plaintiff is a 61-year-old African-American Hebrew Israelite, a "High Priest of the Messianic Hermetic Order of Melchizedek," and a "m[e]taphysical practitioner." (TAC ¶ 2).

### A.  Events Relating to Plaintiff's Confinement at CSP-COR

On June 20, 2008, plaintiff was diagnosed as a "qualified individual with a disability" under the ADA and Rehabilitation Act. (TAC ¶ 2).

On December 21, 2011, plaintiff submitted an Inmate Health Care Appeal Form CDCR 602-HC ("CDCR 602-HC") requesting, pursuant to California Health and Safety Code section 11362.785(d), an application to join the identification card program of the California Compassionate Use Act of 1996[6] to permit him to receive

---

[6]California Health and Safety Code section 11362.5 – the Compassionate Use Act of 1996 – states the findings and declarations of the people of the State of California regarding the purposes of such Act and reflects that one such purpose is:

(continued...)

5

marijuana treatment for his chronic back pain and osteoarthritis. (TAC ¶¶ 7-9; TAC Ex. A1 at 38).

On February 3, 2012, defendant McCabe denied such appeal at the first level of administrative review stating, in part,

> [Your] medical condition does not warrant the use of medical marijuana [as] treatment for your chronic back pain and osteoarthritis. This case was presented to the pain committee which resulted in the pain committee declaring that there is no medical justification for medical marijuana treatment. This request was denied based on objective finding which is based on medical practice.

(TAC ¶ 9; TAC Ex. B at 39, 45). Dissatisfied, plaintiff appealed to the second level of review, complaining that the denial of such appeal violated the ADA, the Rehabilitation Act, the Eighth Amendment, and the Compassionate Use Act. (TAC Ex. B at 36, 39).

---

[6](...continued)
To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.

Cal. Health & Safety Code § 11362.5(b)(1)(A). Sections 11362.71(b)(1)-(2) essentially call for every county health department or designee to provide applications upon request to individuals seeking to join a voluntary program for issuance of identification cards to qualified patients, and to receive and process such applications. Section 11362.785, as pertinent here, essentially provides that (1) nothing therein requires any accommodation of medicinal use of cannabis in penal institutions (Section 11362.785(a)); (2) notwithstanding the foregoing, a person shall not be prohibited or prevented from obtaining and submitting the written information and documentation necessary to apply for an identification card on the basis that he/she is confined in a penal institution (Section 11362.785(b)); and (3) nothing therein prohibits a penal institution from permitting a prisoner with an identification card to use cannabis for medicinal purposes under circumstances that will not endanger the health or safety of other prisoners or the security of the facility (Section 11362.785(c)).

In a February 24, 2012, Institution Response for Second Level HC Appeal, defendants Wang and Macias denied plaintiff's second level appeal explaining to plaintiff, in pertinent part:

> As part of the [review] process, you [] had a pain intake done by your doctor. You also had a mental health evaluation and physical therapy evaluation done. These three reports along with your medical and C-files were carefully reviewed. The [pain] committee weighed all of the evidence and recommended that no opiates or gabapentin be prescribed. This also includes marijuana. It was noted that in the past you have abused glue, alcohol, marijuana, PCP, and IV heroin. It is not in your best interests to give you any substance which you have abused. It is noted that you admit to doing burpees, even after you were advised by the physical therapist to stop. You have been noncompliant with the proper exercises given to you by physical therapy which are intended to help strengthen you[r] back. You are currently receiving Tylenol for your pain issue which is appropriate for your arthritis and Degenerative Dis[c] issues.

(TAC ¶ 10; TAC Ex. B at 39, 43-44). Dissatisfied, plaintiff filed a third level appeal on March 8, 2012. (TAC ¶ 14; TAC Ex. B at 36-39).

Plaintiff does not have a history of substance abuse, has never abused glue, alcohol, marijuana, PCP, or IV heroin, and contrary notations in plaintiff's medical records are false. (TAC ¶¶ 12-13).

On June 13, 2012, defendant Zamora denied plaintiff's third level appeal, finding no compelling evidence warranted intervention as plaintiff's medical condition had been evaluated by licensed clinical staff and plaintiff was receiving treatment deemed medically necessary. (TAC ¶ 14; TAC Ex. B at 41-42).

///

///

7

1    **B.    Events Relating to Plaintiff's Confinement at CSP-LAC**

2        Plaintiff was transferred to CSP-LAC on March 23, 2012.  (TAC ¶ 15).

3        On April 6, 2012, plaintiff felt the discs in his lower back shift while he was

4    exercising, and experienced severe pain to the point that he could not stand or walk.

5    (TAC ¶ 16).  Plaintiff was taken by ambulance to the triage and treatment area

6    where he was seen by defendant Olukamni.  (TAC ¶ 17).  Defendant Olukamni

7    entered the emergency area laughing and joking about performing a rectal exam and

8    prepared to do so without questioning plaintiff regarding his medical condition.

9    (TAC ¶ 17).  Defendant Olukamni asked plaintiff to pull his pants down and lie

10   down on the table.  (TAC ¶ 17).  When plaintiff inquired as to what a rectal exam

11   had to do with back pain, defendant Olukamni responded that he had received a call

12   indicating the plaintiff could not walk, and that he needed to see if plaintiff was

13   paralyzed.  (TAC ¶ 17).  Plaintiff explained that he had severe pain in his low back,

14   but could stand and move his legs.  (TAC ¶ 17).  Defendant Olukamni told plaintiff

15   "if he was there for drugs, he had come to the wrong place, and that the only thing

16   plaintiff was getting was a rectal exam."  (TAC ¶ 17).  When defendant Olukamni

17   asked if plaintiff was refusing treatment, plaintiff said "no."  (TAC ¶ 17).

18   Defendant Olukamni then gave plaintiff a rectal exam but performed no other

19   examination and gave plaintiff no other treatment.  (TAC ¶ 17).

20       On April 11, 2012, plaintiff filed a staff complaint against defendant

21   Olukamni alleging "unprofessional conduct and denial of adequate medical

22   treatment, and criminal conduct."  (TAC ¶ 18).  Defendants Adams and Finander

23   reviewed the staff complaint, and found that the standard of care when a patient

24   complains of acute back pain with reported inability to walk is a rectal exam to rule

25   out "caud[a] equina syndrome."  (TAC ¶ 18).  Since plaintiff was able to get up out

26   of the wheelchair and onto the examination table, it was clearly obvious that

27   plaintiff was not suffering from "caud[a] equina syndrome."  (TAC ¶ 18).

28   Defendant Olukamni could have examined the reflexes in plaintiff's knees and

8

ankles to determine whether or not he was suffering from "caud[a] equina syndrome."  (TAC ¶ 18).

Defendant Zamora subsequently upheld the determination of defendants Adams and Finander.  (TAC ¶ 19).

## III.    PERTINENT LEGAL STANDARDS

### A.    The Screening Requirement

As plaintiff is a prisoner proceeding IFP on a civil rights complaint against governmental defendants, the Court must screen the Third Amended Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Department, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

When screening a complaint to determine whether it states any claim that is viable (i.e., capable of succeeding), the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).  Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure.  Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013).  Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which [that claim] rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing id. at 555).

9

To avoid dismissal on screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Byrd, 885 F.3d at 642 (9th Cir. 2018) (citations omitted); see also Johnson v. City of Shelby, Mississippi, 135 S. Ct. 346, 347 (2014) (per curiam) (Twombly and Iqbal instruct that plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility"). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted); see also Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule 8 pleading requirements) (emphasis added); Chappell v. Newbarth, 2009 WL 1211372, *3 (E.D. Cal. May 1, 2009) ("[A] complaint must put each defendant on notice of Plaintiff's claims against him or her, and their factual basis.") (citing Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004)). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted). At the screening stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting id.), cert. denied, 135 S. Ct. 980 (2015).

In general, civil rights complaints are interpreted liberally in order to give *pro se* plaintiffs "the benefit of any doubt." Byrd, 885 F.3d at 642 (citations and internal quotation marks omitted). Nonetheless, a *pro se* plaintiff must still follow the rules of procedure that govern all litigants in federal court, including the Rule 8

requirement that a complaint minimally state a short and plain statement of a plausible claim.  See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir.) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.") (citation omitted), cert. denied, 516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of [a] claim that were not initially pled.") (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks omitted; ellipses in original).

If a *pro se* complaint is dismissed for failure to state a claim, the court must "freely" grant leave to amend.  Cafasso v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted).  Nonetheless, courts have the discretion to deny leave to amend in cases of undue delay, bad faith, undue prejudice to the opposing party, "repeated failure to cure deficiencies by amendments previously allowed," and futility.  See Foman v. Davis, 371 U.S. 178, 182 (1962); Cafasso, 637 F.3d at 1058 (citations omitted).  Courts have "particularly broad" discretion where a plaintiff "has previously amended the complaint."  Cafasso, 637 F.3d at 1058 (citation and quotation marks omitted); see also Griggs v. Pace American Group, Inc., 170 F.3d 877, 879 (9th Cir. 1999) ("The trial court's discretion . . . is particularly broad where . . . a plaintiff previously has been granted leave to amend.") (citations omitted).

## B.  Section 1983 Claims

To state a claim under Section 1983, a plaintiff must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights.  42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).  There is no vicarious liability in Section 1983 lawsuits.  Iqbal, 556 U.S. at 676 (citing, *inter alia*, Monell v. Department of Social Services of the City of New

11

York, 436 U.S. 658, 691 (1978)).  Hence, a government official – whether subordinate or supervisor – may be held liable under Section 1983 only when his own actions have caused a constitutional deprivation.  OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing id.), cert. denied, 571 U.S. 819 (2013).  Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).

### C.      First Amendment – Free Exercise of Religion

Prisoners "retain protections afforded by the First Amendment" including the right to "the free exercise of religion."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted), superseded by statute on other grounds, 42 U.S.C. §§ 2000cc, et seq.  However, as a consequence of incarceration, a prisoner's First Amendment rights are necessarily "more limited in scope than the constitutional rights held by individuals in society at large."  Shaw v. Murphy, 532 U.S. 223, 229 (2001).  An inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974).

To state a First Amendment free exercise claim, an inmate must allege that a prison official's actions (1) "substantially burden[ed]" the inmate's exercise of a sincerely held religious belief; and (2) did so in an unreasonable manner – i.e., the official's actions were not "rationally related to legitimate penological interests."  See O'Lone, 482 U.S. at 348-50; Jones v. Williams, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015) (citation omitted); Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (citations omitted).  "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs."  Jones, 791 F.3d at 1031-33 (citations omitted).

### D. Eighth Amendment – Deliberate Indifference to Serious Medical Needs

Prison officials violate the Eighth Amendment when they respond with deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103-05 (1976) (citations and footnotes omitted).

An inmate's medical need is sufficiently "serious" if, objectively, the failure to treat it "will result in significant injury or the unnecessary and wanton infliction of pain." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (citations and internal quotation marks omitted), cert. denied, 135 S. Ct. 946 (2015). Such medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. . . ." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991) (citations omitted), overruled on other grounds by WMX Technologies, Inc., v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official acts with deliberate indifference when the official is subjectively aware of, but *purposefully* ignores or fails to respond to an "excessive risk to inmate health" (*i.e.*, a serious medical need). Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (citations omitted). A defendant's alleged indifference must be "substantial." Estelle, 429 U.S. at 105-06; Lemire v. California Department of Corrections and Rehabilitation, 726 F.3d 1062, 1081-82 (9th Cir. 2013) (citations omitted). A prison doctor's mistake, negligence, or malpractice does not establish deliberate indifference to serious medical needs. Estelle, 429 U.S. at 105-06. "Even gross negligence is insufficient . . . ." Lemire, 726 F.3d at 1082 (citation omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

///

13

also draw the inference." Colwell, 763 F.3d at 1066 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)) (quotation marks omitted).

A prisoner need not prove that he was completely denied medical care. Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc). Rather, deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05 (footnotes omitted). Mere disagreement with a defendant's professional judgment concerning what medical care is most appropriate under the circumstances, however, is insufficient to show deliberate indifference. Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted). Hence, the medical care a defendant provided to an inmate amounts to deliberate indifference only if the doctor chose a course of treatment that "was medically unacceptable under the circumstances" and did so "in conscious disregard of an excessive risk to plaintiff's health." Colwell, 763 F.3d at 1068 (citations and internal quotation marks omitted).

As noted above, where a plaintiff seeks to hold a prison official personally liable for damages, the plaintiff must establish a causal link between the particular defendant's deliberate indifference and the constitutional deprivation alleged. Leer, 844 F.2d at 633-34.

### E.     Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985), abrogated on other grounds as explained in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002). A Section 1983 claim predicated on an equal protection violation may be alleged, in pertinent part, under two theories. First, a plaintiff may state an equal protection claim by alleging that he was intentionally discriminated against based

14

upon his membership in a protected class.  See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), implicitly abrogated in part on other grounds as explained in Galbraith, 307 F.3d at 1125-26; see also Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).  Alternatively, if the challenged action did not involve a suspect classification, a plaintiff may still state an equal protection claim essentially by alleging that:  (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1972); SeaRiver Maritime Financial Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002).

An Equal Protection Clause violation does not arise from a prison's uniform "anti-marijuana" policy that is applied to all inmates.  See Harris v. Lake County Jail, 2012 WL 1355732, *8 (N.D. Cal. Apr. 18, 2012) (dismissing Equal Protection Clause claim for failure to state a claim where County's uniform "anti-marijuana" policy" applied to all inmates).

**F.     ADA**

To state a claim for violation of Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of his disability.  Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003).  The ADA does not provide a basis to sue state officials in their individual capacities.  Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002), cert. denied, 537 U.S. 1104 (2003).  The treatment or lack of medical treatment for a plaintiff's condition does not provide a basis upon which to impose liability under the ADA.  Burger v. Bloomberg, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions not basis for ADA claims); Bryant v. Madigan, 84

F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."). In addition, medical marijuana use is not protected by the ADA. James v. City of Costa Mesa, 700 F.3d 394 (9th Cir. 2012), cert. denied, 569 U.S. 994 (2013).

**IV.  DISCUSSION**

Here, as discussed more fully below, the Third Amended Complaint – like its predecessors – is deficient in multiple respects.[7]

First, the Third Amended Complaint violates Rule 8 because it contains multiple conclusory allegations that two or more unspecified defendants acted collectively to injure plaintiff. (See, e.g., TAC ¶¶ 7, 10-11, 13-14, 22, 23, 25). As the Court has repeatedly explained, such allegations against an indistinguishable group of defendants fail to demonstrate a causal link between any *individual* defendant's conduct and an alleged constitutional violation, and thus are insufficient to state a viable Section 1983 individual capacity claim against any specific defendant. (See First Dismissal Order at 15-16; Second Dismissal Order at 15-16; Third Dismissal Order at 20-21).

Second, to the extent plaintiff again sues defendants in their official capacities for damages, for essentially the same reasons explained at length in the First, Second, and Third Dismissal Orders, which reasons are incorporated herein by reference, the Third Amended Complaint fails to state a Section 1983 claim.

///

---

[7]To the extent plaintiff intends to sue Kim – who is not named in the caption but is characterized as a defendant in the body of the Third Amended Complaint (see supra note 5) – such pleading, like its predecessor, and notwithstanding the Court's order regarding the same (see Third Dismissal Order at 19) – violates Rule 10 because it does not name all of the defendants in the caption. See Fed. R. Civ. P. 10(a) (complaint, among other things, must state the names of "all the parties" in the caption). Dismissal on this basis alone is appropriate. See Ferdik v. Bonzelet, 963 F.2d 1258, 1263 (9th Cir.), as amended (May 22, 1992) (affirming dismissal of action based on failure to comply with court order that complaint be amended to name all defendants in caption as required by Rule 10(a)), cert. denied, 506 U.S. 915 (1992).

(See First Dismissal Order at 14-15; Second Dismissal Order at 14-15; Third Dismissal Order at 19-20).

Third, the Third Amended Complaint also fails to state a viable Section 1983 individual capacity claim against the defendants. For example, plaintiff does not identify any specific conduct by defendants Thiel, Nguyen, Shank, Wu, Fitter, or Marcelo at all, much less particular misconduct which plausibly caused any constitutional deprivation about which plaintiff complains. Defendants Zamora, McCabe, Adams, and Finander appear to be sued based solely on their alleged improper handling of plaintiff's inmate grievances and/or appeals. (TAC ¶¶ 9, 14, 18, 19). As plaintiff has been informed multiple times, however, such allegations alone cannot serve as a basis for Section 1983 liability. (See First Dismissal Order at 18-19; Second Dismissal Order at 18-19; see also Third Dismissal Order at 20).

In addition, to the extent plaintiff asserts that defendant Olukamni provided constitutionally inadequate medical care during the April 6, 2012 emergency visit with plaintiff, the Third Amended Complaint fails to state a viable Section 1983 individual capacity claim. Even when very liberally construed, plaintiff's allegations in the Third Amended Complaint on the whole suggest, at most, that defendant Olukamni may have acted negligently and/or pursued a course of diagnosis and treatment with which plaintiff disagreed (*i.e.*, was unprofessionally jovial, conducted a rectal exam to rule out "caud[a] equina syndrome" without obtaining plaintiff's medical history and despite "clearly obvious" signs that plaintiff actually did not have the syndrome, could have used less invasive diagnostic methods, should have done more to treat plaintiff's condition) (TAC ¶¶ 17-18) – which, again, is insufficient to state a viable Eighth Amendment claim for *deliberate* indifference. See, e.g., Farmer, 511 U.S. at 835 ("deliberate indifference entails something more than mere negligence") (citation omitted); Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Smith v. Suiter, 579 Fed. Appx.

17

608, 608 (9th Cir. 2014) ("mistakes, negligence, or malpractice by medical professionals are not sufficient to constitute deliberate indifference. . .") (citation omitted); Lemire, 726 F.3d at 1082 ("Even gross negligence is insufficient to establish deliberate indifference [under the Eighth Amendment].") (citation omitted); see also Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."); cf., e.g., Harris v. Lake County Jail, 2012 WL 1355732, at *4-5* (N.D. Cal. Apr. 18, 2012) (plaintiff failed to state a deliberate indifference claim based on the denial of medical marijuana because there is no constitutional right to demand jail officials provide plaintiff with medicine of his choosing, including medical marijuana) (collecting cases holding same). Plaintiff's conclusory allegation that defendant Olukamni's conduct was "criminal" is also insufficient to state a viable Section 1983 claim. See Pena, 976 F.2d at 471 (Vague and conclusory allegations of official participation in civil rights violations are not sufficient to state a claim under Section 1983.) (citing Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982)); see also Iqbal, 556 U.S. at 680-84 (conclusory allegations in complaint which amount to nothing more than a "formulaic recitation of the elements" are insufficient under pleading standard in Fed. R. Civ. P. 8) (citations omitted).

Fourth, regarding plaintiff's federal claims generally, even with the most generous interpretation, the Third Amended Complaint asserts the same claims predicated on the same set of core facts as plaintiff alleged in the Original, First Amended, and Second Amended Complaints. Hence, the Third Amended Complaint fails to state a viable federal claim for essentially the same reasons explained in the First, Second, and Third Dismissal Orders, which are incorporated herein by reference. (See First Dismissal Order at 15-19; Second Dismissal Order at 15-20; Third Dismissal Order at 20-23).

///

18

1    Fifth, the remainder of the Third Amended Complaint is a cryptic, and at

2    times rambling and incomprehensible, collection of immaterial background

3    information and duplicative, irrelevant, and conclusory factual and legal assertions

4    which amounts to no more than the "formulaic recitation of the elements" of any

5    asserted civil rights cause of action which, again, is insufficient to state a viable

6    Section 1983 claim.  Cf. McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996)

7    (complaint subject to dismissal under Rule 8 if "one cannot determine from the

8    complaint who is being sued, for what relief, and on what theory, with enough

9    detail to guide discovery."); Sparling v. Hoffman Construction Company, Inc., 864

10   F.2d 635, 640 (9th Cir. 1988) (complaint that contains factual elements of cause of

11   action scattered throughout complaint and not organized into "short and plain

12   statement of the claim" may be dismissed for failure to satisfy Rule 8(a)); see also

13   Knapp v. Hogan, 738 F.3d 1106, 1109-10 & n.1 (9th Cir. 2013) (violations of Rule

14   8 "short and plain statement" requirement "warrant dismissal") (citations omitted),

15   cert. denied, 135 S. Ct. 57 (2014); Cafasso, 637 F.3d at 1059 ("pleading that was

16   needlessly long, or a complaint that was highly repetitious, or confused, or

17   consisted of incomprehensible rambling" violates pleading requirements under

18   Federal Rules of Civil Procedure) (citation and internal quotation marks omitted).

19   To the extent plaintiff suggests that he has stated a Section 1983 claim merely by

20   referencing the exhibits attached to the Third Amended Complaint, he is incorrect.

21   It is not the Court's responsibility to sift through plaintiff's multiple exhibits in an

22   attempt to glean whether plaintiff has an adequate basis upon which to state any

23   other claim for relief.  Cf. Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1066 (9th

24   Cir. 2009) ("[j]udges are not like pigs, hunting for truffles buried in briefs")

25   (citation omitted); Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir.)

26   ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges

27   and adverse parties need not try to fish a gold coin from a bucket of mud.") (cited

28   with approval in Knapp, 738 F.3d at 1111), cert. denied, 540 U.S. 968 (2003);

19

<u>Stewart v. Ryan</u>, 2010 WL 1729117, *2 (D. Ariz. Apr. 27, 2010) ("It is not the responsibility of the Court to review a rambling narrative in an attempt to determine the number and nature of a plaintiff's claims.").

Sixth, to the extent plaintiff intends to raise claims arising under state law, the Court finds it would not be appropriate to exercise supplemental jurisdiction over such claims in the instant case where the Third Amended Complaint fails to state any viable federal claim over which this Court has original subject matter jurisdiction. <u>See</u> 28 U.S.C. § 1367(c)(3) (district court may decline supplemental jurisdiction over claim where "court has dismissed all claims over which it has original jurisdiction"); <u>Carlsbad Technology, Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639 (2009) (recognizing district court's discretion to decide whether to exercise supplemental jurisdiction over state-law claims after district court dismissed "every claim over which it had original jurisdiction") (citations omitted); <u>see, e.g.</u>, <u>Acri v. Varian Associates, Inc.</u>, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (citation and quotation marks omitted); <u>see generally</u> <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 940 (9th Cir. 2012) (en banc) (district court must affirmatively indicate that it has exercised its discretion to decide whether to keep state claims in federal court after all federal claims have been dismissed).

Finally, as discussed above, the Court has thoroughly reviewed plaintiff's complaints, repeatedly informed plaintiff of the fundamental pleading defects therein, explained in detail how to correct them, and afforded plaintiff multiple opportunities to do so. Plaintiff has been either unable or unwilling to state a viable claim based on essentially the same factual allegations in four separate versions of his complaint. Hence, granting plaintiff yet another chance to amend his complaint would clearly be an exercise in futility. Accordingly, dismissal of the Third Amended Complaint without leave to amend is appropriate. <u>See</u> <u>Williams v.</u>

<u>California</u>, 764 F.3d 1002, 1018-19 (9th Cir. 2014) (affirming dismissal of amended complaint without leave to amend based on futility where, despite having received "two chances[] to articulate clear and lucid theories underlying their claims" the plaintiffs merely repeated allegations previously found deficient); <u>Allen v. County of Los Angeles</u>, 2009 WL 666449, *4 (C.D. Cal. Mar. 12, 2009) ("Because the underlying factual allegations of constitutional harm have been dismissed twice previously, and Plaintiff's current allegations exceed the scope of the court's grant of leave to amend, this dismissal should be without leave to amend."); <u>Serpa v. SBC Telecommunications, Inc.</u>, 2004 WL 2002444, *4 (N.D. Cal. Sep. 7, 2004) (citations omitted) (where previous attempts to amend have failed to cure a deficiency and it is clear that proposed amendment does not correct defect, court has discretion to deny motion for leave to amend) (citing <u>Shermoen v. United States</u>, 982 F.2d 1312, 1319 (9th Cir. 1992), <u>cert. denied</u>, 509 U.S. 903 (1993)).

**V.    ORDER**

In light of the foregoing, IT IS HEREBY ORDERED:  (1) the Third Amended Complaint is dismissed without leave to amend; (2) this action is dismissed with prejudice as to plaintiff's federal claims and without prejudice as to plaintiff's state law claims; and (3) judgment shall be entered accordingly.

IT IS SO ORDERED.

DATED: May 8, 2019

_____
HONORABLE R. GARY KLAUSNER
UNITED STATES DISTRICT JUDGE